Argued March 3, decided June 22, rehearing denied August 24, 1909.

## MORSE *v.* WHITCOMB.

[102 Pac. 788; 103 Pac. 775.]

EVIDENCE—EVIDENCE FOUNDED ON HEARSAY—REPUTE AS TO FACTS—
OWNERSHIP.

1. In a suit to enjoin the closing of an alleged street which plaintiffs claim defendants represented, upon selling lots to them, would remain open as a

street, evidence that the strip was known by the public in general as T street, and appeared upon the city and telephone directories, and was called out by the street car conductor, by that name, and that mail was addressed to residents in that vicinity as on that street, was admissible in connection with numerous other circumstances tending to show that the strip was reserved for a street to show how it was generally treated by the public in that vicinity, Section 788, subd. 12, B. & C. Comp., making it a disputable presumption that one is the owner of property from common reputation of his ownership.

EVIDENCE—HEARSAY—REPUTE AS TO FACTS—OWNERSHIP.

3. Common or general reputation is admissible to show a fact in which the public have an interest or which directly affects the mass of the people in a locality.

DEDICATION—EVIDENCE—SUFFICIENCY.

3. In a suit to enjoin the closing of an alleged street which plaintiffs claimed that defendants represented, upon selling lots to them, would remain open as a street, evidence *held* to show that plaintiffs purchased the land with the understanding that the tract would be open as a street.

DEDICATION—EVIDENCE—ADMISSIBILITY.

4. In an action to restrain the closing of a tract which plaintiffs claim defendants represented, upon selling lots to them, would be open as a street, a map showing various streets platted in lots of uniform size, with a number of smaller lots along the strip which plaintiffs claim was intended to be reserved as a street, was admissible to corroborate plaintiffs' testimony as to defendants' statement that that tract would be opened as a street.

ESTOPPEL—ESTOPPEL TO DENY DEDICATION.

5. Where defendants sold a number of lots, and represented to the purchasers that a tract adjacent thereto would be opened as a street, receiving an increased price for the lots because of their proximity to the proposed streets, defendants were estopped to deny that the strip was dedicated as a public street.

PRINCIPAL AND AGENT—RATIFICATION—RATIFICATION IN PART.

6. Where defendants' agent sold lots for them, receiving an increased price because of representations that an adjacent tract would be opened as a street, defendants, having received the proceeds of the sale, cannot assert that their agent exceeded his authority in making such representations.

EVIDENCE—PAROL EVIDENCE—ESTOPPEL.

7. While ordinarily purchasers of lots shown on plats thereof cannot claim more than is shown by the plat, where plaintiffs purchased lots upon representations that an adjacent tract which was shown on the plats as fractional lots would be opened as a street, they could show such representations by parol by way of estoppel; such evidence not being admitted to vary the plat.

APPEAL AND ERROR—REVIEW—TRIAL DE NOVO—EQUITY SUITS.

8. Equity suits are tried *de novo* on appeal.

HIGHWAYS—EXISTENCE—EVIDENCE.

9. The existence of a street or highway may be proved by showing a parol dedication accompanied by the user thereof by the public.

DEDICATION—EVIDENCE—ADMISSIBILITY.

10. A parol dedication accompanied by user may be shown by the acts of the owner such as selling lots on opposite sides of a strip suitable for a street and acquiescing in its use by the public for a long period of time.

DEDICATION—PUBLIC STREET—EVIDENCE—ESTOPPEL.

11. Evidence examined and *held* sufficient to establish the fact that defendants dedicated, as a public street, the strip of land in controversy, and should be enjoined from in any manner obstructing it.

HIGHWAYS—EASEMENTS—OBSTRUCTIONS.

12. Where a party seeks to restrain an obstruction of a highway or easement, the injured party is not limited or confined to that part of the roadway or easement abutting upon or in front of his premises.

From Multnomah: MELVIN C. GEORGE, Judge.

For appellants there was a brief over the names of *Mr. William P. Lord* and *Mr. Allen R. Joy,* with an oral argument by *Mr. Joy.*

For respondents there was a brief with oral arguments by *Mr. Jarvis V. Beach* and *Mr. David Goodsell.*

MR. JUSTICE KING delivered the opinion of the court.

This is a suit brought by Amelia E. Morse, John Walton, William T. Moir, and George Stehnken against F. E. Whitcomb, David Goodsell, and T. S. McDaniel to restrain them from obstructing, by building or otherwise, an alleged street, or roadway, 24½ feet in width, running east and west along the south line, and a part of blocks 11 to 20, inclusive, in that portion of the city of Portland known as "East Portland Heights." The trial court, after hearing the evidence and making an examination of the premises, made findings of fact to the effect that there had never been a dedication of the land to public use; that it had never been occupied by plaintiffs, or their grantors, or any of them, or by the public, or by any person, as a public way, except such use by plaintiffs for such purposes, by permission of the defendants, without any claim or right thereto; that none of the lots abutting upon the disputed strip of land were sold or transferred to any person with any guarantee, promise or claim that such strip would ever be a public way or street; that defendants are not estopped by reason of any sale, representations, or acts on their part, or their grantors, from questioning plaintiffs' rights therein, resulting in a dismissal of the suit, and this appeal therefrom.

The salient facts are: The blocks mentioned were formerly owned by H. D. McGuire and defendant Goodsell. The defendant, McDaniel, purchased an interest therein about the year 1904, and the other defendants acquired their interests since the purchase by plaintiffs. Prior to the year 1891 East Portland Heights was platted by McGuire and Goodsell, the then owners thereof, into lots, blocks, streets, alleys, etc., the fractional lots on the south of each of the blocks being 24½ feet in width and numbered 8 and 9 in each block. Between each of the blocks running north and south, streets appear numbered 26 to 36, inclusive, which streets extend across the 24½-foot strip in question, to and abutting the Waverley addition, on the south, along the north line of which no provision for a street appear to have been made. Morse purchased lots 6 and 7, in block 19, abutting upon the strip in controversy from McGuire and Goodsell in 1891, and he and his wife testify that McGuire showed them the property, and, on being informed by them that they wanted a southeast corner lot, McGuire pointed out to them lots 6 and 7, stating they were corner lots; that the 24½-foot strip was reserved for a street, making one half of the street, the balance of which was to fall upon the adjacent property, and that, in any event, they would have an outlet to the extent of the strip thus reserved. The other plaintiffs testify to having purchased the property with a similar understanding, the information concerning which was given them by agents of the owner from whom they purchased. J. M. Smith testifies that he has resided in the locality of this tract of land since 1890; that he had an understanding with McGuire concerning the sale of lots on commission; that he found a customer whom he introduced to McGuire; and that they together looked over the property, the customer stating that he wanted corner lots, and finally made the purchase, in reference to which the witness, in substance, states: Mrs. Du Bois wanted corner lots; wanted two

lots, and first selected a corner lot with an inside lot on another tract which he had in charge to sell, and, when she found that she could not get a west frontage, he discovered he was in danger of losing her for a customer and solicited the privilege of turning her over to Mr. McGuire, to which she consented; that McGuire showed them the plat, and they inquired particularly about these fractional lots, and they said they were not for sale, but were reserved for a street; and that later she purchased on the corner where Thirty-first street intercepts what is called "Taggart Street," facing the west, and immediately erected a building thereon, which sale, he testified occurred in 1891, and for which he received the commission agreed upon between him and McGuire. It further appears that McGuire instructed Smith that the corner lots were sold according to the "lay of the land," and that lots 10 and 11, in block 16, abutting upon the 24½-foot strip were sold to Mrs. Du Bois, who paid a higher price than the lots north of them were listed for, and that, when Smith asked McGuire for the privilege of selling the fractional lots constituting the strip in question, McGuire assured him they were not for sale, but were reserved "for a purpose" and, when the witness asked "for what purpose," responded, "purpose of a street."

A number of other witnesses were called who testified that McGuire gave them permission to sell lots in that addition on commission, and it is clearly disclosed by the testimony that all of the plaintiffs purchased under representations in effect as above given, either from McGuire or from his agents, and others, not parties to the suit, testify to having purchased corner lots under a similar understanding.

1. It is evident from the testimony that the lots along this strip of land were purchased as corner lots, and that the purchasers thereof fully believed they were bordering upon a strip of land which either had been, or would be, reserved for a street; and that the lands along this alleged

street sold for a higher figure than those further north is not questioned. It is also clear that there was no material difference in the "lay of the land," but that the difference in the price paid ran from $50 to $100 per lot. Although the strip of land in question is not in the usual sense in which the term is used, a public highway, it is obvious that since about the year 1891 it has constituted the principal thoroughfare for the owners of property adjacent thereto; that delivery wagons came that way; that plaintiffs hauled their wood and other supplies over it; and that, while there were other possible ways of egress and ingress, they depended upon no other route for that purpose. It is true that there were other streets through which egress and ingress could have been made, but that this was the principal and most convenient thoroughfare, and the one principally relied upon by the owners of property in the vicinity, is sufficiently established. It is also shown that it was known and recognized by the public in general as "Taggart street," and, except during one or two years appeared upon the telephone and city directories under that name, was called out as such by street car conductors, and the mail going to residents in that vicinity was usually adressed to them as being on Taggart street. The admissibility of this class of testimony was objected to, and it is disclosed by the record that the trial court did not deem it material; but, while we think such testimony, standing alone, would not be sufficient to establish a dedication and would not be admissible for the purpose of proving ownership of the property, it is proper, along with numerous other circumstances surrounding the controversy, for the pur- of showing how the disputed tract was treated by the public, to which extent it tended to sustain the claim that this strip of land was intended to be reserved for the purpose for which it, during these many years, was used and treated by the owners thereof and public in general, coming, therefore, within that class of testi-

54 Or.— 14

mony deemed admissible under Section 788, subd. 12, B. & C. Comp. To the same effect: *Wilson* v. *Maddock,* 5 Or. 480, 481; *Bartel* v. *Lope,* 6 Or. 321, 327; *Raymond* v. *Flavel,* 27 Or. 219, 248 (40 Pac. 158); *Meyers* v. *Dillon,* 39 Or. 581 (65 Pac. 867: 66 Pac. 814); *Eastern Oregon Land Co.,* v. *Cole,* 35 C. C. A. 100 (92 Fed. 949).

2. As stated in *Wilson* v. *Maddock*: "It has been long held that common or general reputation may be received concerning a matter in which the public have an interest, or which directly concerns and affects the mass of the people of a town or locality. * *" The testimony alluded to certainly tends to show how the disputed tract was generally treated by the people in that vicinity, and it may be considered for that purpose.

3. Defendant Goodsell denies that he at any time personally stated that this strip was intended to be a street, but we think it established by a clear preponderance of the evidence that it was, in fact, so intended, and that the plaintiffs and others purchased under the theory and belief that it was thus intended, to say nothing of the feature that the grantors permitted the property to be sold as corner lots and received higher prices by reason thereof.

4. We are not unmindful of the rule announced and applied in the case of *Hogue* v. *City of Albina,* 20 Or. 182, 187 (25 Pac. 386, 388: 10 L. R. A. 673) to the effect: "A dedication is not presumed, but must be shown by the acts and declarations of the owner of such a public and deliberate character as clearly to show an intention on his part to surrender his land for the use of the public, and the burden of proof for which is on the party asserting such dedication * * and, unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists." This is not a case where it is sought to establish a dedication by reference to the map or plat further than that the circumstances disclosed by the map, showing the various

street with blocks platted into lots of uniform size, with lots of much smaller dimensions along the strip, where it is claimed the street was intended to be reserved, are circumstances tending to corroborate the testimony of plaintiffs with reference to declarations of McGuire, and such plat was only offered and only entitled to be considered for that purpose, to which extent, at least, it is analogous to the case of *Warden* v. *Blakely*, 32 Wis. 690, where the court held that from an inspection of a plat which gave the block, with nothing to indicate that there was any street along the disputed line, it was "perfectly clear upon the face of the plat itself, offered in evidence, that Alice street extends along the south side of block 20, and consequently that the *locus in quo* is a part of one of the public streets of the village of Darlington. * * The subdivision of lots in block 20 shows that it was the intention of the original proprietor that Alice street should extends south of that block." The court further observed: "But it is objected on the other side that, if this was the intention of the proprietor, he would have designated Alice street by a line south of block 20, as was done in reference to other streets upon the plat. But the circumstance that there is no line there defining the boundary of the street can have no such controlling effect as the counsel for the plaintiffs is disposed to give it. * * Indeed, upon an examination of the plat itself, it seems impossible to arrive at any other conclusion than that it was the intention of the original proprietor to have Alice street extend across Main street and along the south side of block 20."

5. Defendants insist that by reason of his death, which occurred in 1898, they are deprived of McGuire's testimony, but we cannot presume that his testimony would have been more favorable to defendants than to plaintiffs. In fact, plaintiffs are equally entitled to insist that they are also deprived of valuable testimony by reason of the accident casuing his untimely demise. Statements of the

witnesses relative to McGuire's representations at the time of the sales made by him, which were apparently under his control and management at the time plaintiffs became the purchasers, are consistent with subsequent events, as well as with the conceded facts that the lands purchased by plaintiffs are adjacent to the alleged street, and that no sales were attempted, or even permitted, of any of the fractional lots for more than ten years after plaintiffs purchased, and not until long after McGuire's demise, nor until after the realty in that vicinity had largely enhanced in value. It would certainly be inequitable to permit defendants to receive the enhanced value of the lots sold plaintiffs by reason of their proximity to what was represented to them as an intended street, and at the same time to retain the strip of land, which largely served the purpose of bringing about the sale. In other words, to do so would be to say that on the strength of this strip becoming a street much money has been received, and after the receipt thereof the street shall be closed, and at the same time the money acquired on its account retained.

6. Nor will it do, even if true, and the testimony strongly tends to establish otherwise, to say that the agents who sold to plaintiffs were, in making their representations with reference to the corner lots, etc., exceeding their authority. The case in these particulars, especially so far as the equities involved are concerned, is analogous to *McLeod* v. *Despain,* 49 Or. 536, 563 (90 Pac. 492: 92 Pac. 1088: 124 Am. St. Rep. 1066), in which we held that the principal must adopt or reject the act of his agent as an entirety, and cannot receive the benefit of such agency without bearing its burdens. To the same effect, see *Dillard* v. *Olalla Mining Co.,* 52 Or. 126 (96 Pac. 678), where the Oregon authorities are collated on the subject.

7. The strong contention of defendants, and, as appears from the record, the position of the learned court

below, appears to be that since the plat, with reference to which the property was purchased, discloses these fractional lots, plaintiffs are precluded from offering any evidence in support of their claim that the fractional lots were intended as a street. While this is the general rule (*Oliver* v. *Klamath Lake Navigation Co.,* 54 Or. 95 [102 Pac. 786]), it is not without exception. Here plaintiffs have pleaded an estoppel. The attempt is not to question the plat, or to show that there were no fractional lots there, as disclosed therein, but that, while such fractional lots appeared upon the plat and were there at the time of the purchase and the execution of the conveyances, they were to be deemed a street and public highway, and as such appurtenant to the property purchased. For instance, assume that the plat disclosed there was a ditch leading from some spring in the vicinity to and upon the premises, and, even though the deeds should not specifically mention such ditch and spring as being appurtenant to such lands, it would not, under the decisions in this State, be seriously questioned but that plaintiffs would be entitled to show by parol that such ditch was one of the appurtenances to the property purchased, and that the title thereto passed with it, regardless of whether specified in the deed or not. *Wimer* v. *Simmons,* 27 Or. 1 (39 Pac. 6: 50 Am. St. Rep. 685) ; *Turner* v. *Cole,* 31 Or. 154 (49 Pac. 971).

8. It must also be remembered that in this State, equity suits are tried *de novo,* while in most of the states from which the authorities are cited by defendants on the facts, the findings of the trial court are for all practical purposes treated as would be the verdict of the jury, and, where there is a conflict in the testimony, are not disturbed. Such, for example, is the case of *City of Los Angeles* v. *Kysor,* 125 Cal. 463 (58 Pac. 90). If such were the rule in this State, we would not feel justified in disturbing the findings of the learned court below, unless it would be on the ground that the record of the

testimony taken, accompanied by the remarks of the court as to its views of the law, clearly indicates that it was acting upon the theory that the map offered in evidence was conclusive, and that, under it, the testimony adduced by plaintiff was not legally entitled to consideration.

9. However, we thing there can be no question as to plaintiffs' rights in this respect, for as stated in substance in *Gwynn* v. *Homan,* 15 Ind. 201, 202, the fact of a street or highway may be proved by showing a parol dedication to the public, accompanied by the user thereof, and such facts may be established by proof of acts on the part of the owner, such as selling lots on opposite sides of a strip of ground suitable for a street or highway, and standing by and seeing it used by the public as such, or by permitting such user, or owner, for a long period of time to use it under such circumstances as may tend to evidence a dedication.

10. Again, it does not seem credible that streets would be provided for at equal distances north of the strip of land in question, and that at this particular point no street was intended; and the fact that these fractional lots were left at the especial place where the street should be, to say nothing of the enhanced value of the adjoining lots, is a strong circumstance tending to establish that it was intended that this strip should be left for that purpose, and was so left by the owners thereof under the theory that the owners of Waverley addition would grant a like strip making a street about the usual width between the additions. It was then but natural that McGuire should make the representations attributed to him, and that the agents selling the property should say to the purchasers that they could safely buy with that understanding and act thereon.

11. After taking into consideration all of the conceded facts, together with other circumstances testified to, we think defendants should be and are estopped to question that the strip of land in controversy was intended, and

accordingly dedicated, as a public street, and that defendants should, therefore, be enjoined from in any manner obstructing it.

It follows that the decree of the court below must be reversed and one entered here in conformity with these views; and it is so ordered.          REVERSED.

---

Decided August 24, 1909.

ON PETITION FOR REHEARING.

[103 Pac. 775.]

MR. JUSTICE KING delivered the opinion of the court.

12. It is insisted in appellants' petition for a rehearing that our conclusion, as heretofore announced, is in conflict with the principles enunciated in *Van Buskirk* v. *Bond,* 52 Or. 234 (96 Pac. 1105), in which it is held that a suit will not lie at the instance of private parties. In that opinion it is clearly stated that a denial of a right to a private party to restrain the obstruction of a highway is limited to cases where it does not appear that he has sustained some damage or injury differing in kind from that suffered by the general public, and that, even where there is evidence establishing such special injury, it must be clearly established or "free from doubt." The words quoted were not intended in a literal sense, or that no possibility of a doubt should exist, but merely that, after an examination of all the testimony, if the court could not, with reasonable certainty, satisfy itself as to the conclusion to be deduced from the testimony, the cause should be remanded for trial at law. After a careful examination of the testimony presented, we deemed it clear therefrom that plaintiffs incurred such special injury by reason of the obstructions complained of as to take the case out of the exceptions noted in *Van Buskirk* v. *Bond,* thereby entitling them to maintain the suit in their behalf. We have again scrutinized the record to ascertain the accuracy of our conclusion upon this

point, and find no reason to change our view. Nor are plaintiffs limited to the part of the roadway or easement in front of their lots. As held, the easement is appurtenant to their premises, is 24½ feet in width, running east and west, and extends along the south line, and a part of blocks 11 to 20, inclusive,

Concerning the question of notice on the part of McDaniel and others, we do not deem it important to inquire whether they had actual notice of the right to use the strip of land in controversy for the purpose claimed; for the record clearly discloses sufficient facts to have put them on inquiry, from which notice must be implied. The details bearing on this feature were sufficiently considered, making a further elucidation of the subject at this time unnecessary.

The rehearing is denied.

REVERSED : REHEARING DENIED.