Argued December 10, 1915, modified January 11, rehearing denied
February 15, 1916.

# NICHOLAS v. TITLE & TRUST CO.*

(154 Pac. 391.)

**Easements—Enjoining Interference When Remedy at Law is Inadequate.**

1. *Upon proper application an injunction will issue to restrain interference with an owner's easement, when it is shown the injury complained of is irreparable, or the intermeddling is continuous, or that the remedy at law to recover damages for such injury is inadequate.*

**Equity—When Objection to Jurisdiction may be Waived.**

2. A court of equity having jurisdiction to protect an easement at the suit of the owner, any defect in the initial pleading is waived when defendant fails to demur for lack of jurisdiction of the subject matter, and then by praying for affirmative relief in its answer.

**Principal and Agent—Authority of Agent Held Out by Principal—Estoppel.**

3. The authority of an agent to bind his principal in contracts with a third party is measured, not only by the agent's express delegation of power, but also by that which such agent is held out by the principal as possessing, provided such third party had reason to believe, and did believe, the agent was acting within the scope of his authority, and such party would sustain a loss if the contract was not regarded as that of the principal.

**Dedication—Principal and Agent—General Agent—Evidence Sufficient to Establish.**

4. Where, in a suit to determine an adverse interest in real property, evidence examined and *held* sufficient to establish that the owner knowingly permitted intending purchasers to believe that the printed plat exhibited to them by the agent of such owner had been duly recorded, and also that he held out agent to be his general agent in negotiating sales of such real property.

**Dedication—Establishment of Dedication by Parol.**

5. Where it is sought to establish a parol dedication, evidence must be adduced that will substantiate a clear intention to devote some particularly described land to a public use.

[As to proof of dedication of highway, see note in 57 Am. St. Rep. 756.]

**Dedication—Intention of Owner to Make Parol Dedication to the Public.**

6. In a suit to determine an adverse interest in real property, evidence is *held* sufficient to establish an intention on the part of the

---

*On implied easement by exhibiting unfiled plat to intending purchasers, see note in 35 L. R. A. (N. S.) 938.        REPORTER.

owner of lots, who is represented by a general agent in selling, to make a parol dedication to the public, as designated upon a printed plat of the property shown to purchasers, of certain streets as highways to be 60 feet in width.

#### Dedication—Representations by Owner to Intended Purchasers — Estoppel in Pais.

7. Where the owner of real property caused the same to be surveyed and platted into lots, blocks and streets, and prepared a map thereof, showing the lots to be of a certain size and the streets of a certain width, which map he exhibited to intending purchasers, and who bought prior to the time that he changed his mind as to the width of the streets, though he intended that the map so exhibited should be superseded by a plat differing therefrom as to the width of the streets, he thereby irrevocably dedicates to the public the streets as shown and designated on the map so exhibited, for the reason such conduct and the circumstances create an estoppel *in pais.*

#### Evidence—Best Evidence—Duplicate Introduced in Lieu of Original.

8. Section 712, L. O. L., declares there shall be no evidence of the contents of a writing other than the writing itself, except in the following cases: 1. When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in Section 782; and 2. When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default, in a suit brought to determine an adverse interest in real property, where the width of certain streets was involved, and the question for decision being whether the owner of the property had represented, by exhibiting to intending purchasers a printed map, that the streets were of a certain width, two duplicates of the printed map exhibited to the purchaser of the property, being identified as such, was properly admitted in evidence for plaintiff, although no testimony was offered to explain the failure or inability to produce the original from which the duplicate was made, for the term "duplicate" signifies more than a mere copy, being identical not only verbally but also in legal import.

#### Dedication—Evidence as to Width of Streets and Highways.

9. In a suit brought to determine an adverse interest in real property, where plaintiff was endeavoring to establish that certain streets on which his lots abutted were 60 feet in width, and prior to the delivery of his deed the original purchaser from the owner, who executed the dedication deed, had examined the block, stepped the width of the highways bordering the same, found them to be 60 feet, and saw them marked with white stakes similar to the one received in evidence, his attention being at the time attracted to these posts, the admission of testimony relating to the stakes, as marking the lines of one of the streets, was not erroneous.

#### Dedication—Extinguishment of Public Right by Adverse Possession.

10. Where the original owner of lands, before selling, caused the same to be platted and dedicated to the public the streets as highways, the statute of limitations never began to run against the right of the successor in title of an original purchaser from such original owner to insist upon the maintenance of such highways, and the sale

of a lot bordering upon a street that is indicated on the plat amounts to an irrevocable offer by the dedicator, that the proposed highways, unless legally vacated, shall ever after remain open to the public.

**Dedication—When Acceptance of a Donation will be Implied—Estoppel.**

11. A formal acceptance of a donation to the public is unnecessary, since an approval of the gift by the proper municipal officers will be implied.

**Dedication—Grantees of Dedicator may Extinguish Right of Public to a Street.**

12. The rights of the public in and to a dedicated street may be extinguished by the grantees of the dedicator, by an unlawful encroachment thereon for the period of the statute of limitations, which purpresture raises an estoppel against the municipality on the ground of its officers failing to assert a right to such easement.

**Dedication—Estoppel—Implied Notice to Grantee.**

13. Where the grantee in a deed of platted lands from the owner, who, by exhibiting a plat to intending purchasers, had marked thereon dedicated highways, could have ascertained the fact by white stakes driven in the ground, to mark the boundary line of such highways, so as to induce further investigation as to the source, nature and extent of the easements, such grantee was estopped to deny that the owner of the land had made a parol dedication binding upon it, although it secured title for valuable consideration by mesne conveyances.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.    Statement by MR. CHIEF JUSTICE MOORE.

This is a suit to determine an adverse interest in real property. The complaint alleges in effect that the plaintiff, H. B. Nicholas, is the owner and in the possession of block 23 in Gearhart Park, Clatsop County, Oregon; that this block is bounded on the east by Summit Avenue, which is 60 feet wide, and on the south by Seventh Street, of the same width; that plaintiff has an easement in and a right to the use of the avenue and street mentioned to their full width bordering upon that block; that the defendant, the Title & Trust Company, a corporation, claims all that part of Seventh Street so described, the east half of Summit Avenue at the place

specified, and also some interest in such block, which claims are without right and void.

The answer denies the material averments of the complaint, and alleges in substance that Summit Avenue is only 25 feet wide, and that Seventh Street does not, and never did, extend south of the block mentioned, setting forth the facts whereby the defendant asserts a title to the land joining the block on the south, and also the premises bounded by a line 25 feet east of the east border of the block specified. The prayer of the answer is in part:

"That plaintiff be forever barred and estopped from making or asserting any claim in or to said property and the use and enjoyment of said streets, otherwise than are set forth and described in the duly recorded map and plat thereof."

The reply put in issue the allegations of new matter in the answer, whereupon the cause was tried, resulting in a decree establishing Seventh Street south of block 23 to be 60 feet wide, and Summit Avenue east of that block to be only 25 feet in width, and both parties appeal.           Modified.   Rehearing Denied.

For appellant there was a brief over the names of *Mr. William D. Fenton, Mr. Ben C. Dey* and *Mr. Kenneth L. Fenton,* with an oral argument by *Mr. Kenneth L. Fenton.*

For respondent there was a brief over the names of *Mr. R. W. Nicholas, Mr. W. C. Nicholas* and *Mr. Newton McCoy,* with oral arguments by *Mr. R. W. Nicholas* and *Mr. W. C. Nicholas.*

Opinion by Mr. Chief Justice Moore.

The evidence shows that in the year 1888 M. J. Kinney purchased a large tract of land in Clatsop

County, Oregon, bordering on the Pacific Ocean, and soon thereafter caused a part of the premises to be surveyed into lots, blocks, streets, etc. A map, purporting to set forth the outlines of the survey, was prepared, and 1,000 copies were printed, and entitled:

"Gearhart Park, as. laid out and recorded by M. J. Kinney, Clatsop Co., Oregon. Regular lots, 50x100. Scale, 1 inch 300 ft. W. I. Crawford, Gen. Agt. Gearhart Park, Seaside, Oregon."

The printed plat contains lines representing cross-streets extending from Cottage Avenue on the west to the Astoria & South Coast Railroad on the east, which streets are numbered, commencing at the north, from First to Twelfth, respectively. Block 23, as indicated, is situated immediately east of a creek and bounded on the north by Sixth Street, on the east by Summit Avenue, and on the south by Seventh Street, each being designated by paralled lines which, according to the scale specified, represent the streets as being 60 feet wide. The map referred to depicts all the land embraced in Gearhart Park as segregated into a park, lots, blocks, streets, etc.

Mr. Kinney and his wife, on August 21, 1890, duly acknowledged a plat of Gearhart Park, whereupon the east end of Seventh Street is represented as terminating at the stream mentioned, which is called Neacoxie Creek. Summit Avenue is indicated as being the first highway east of the creek, extending south from First Street to the southeast corner of block 23, and is marked by parallel lines dĕnoting a space of 25 feet. Kinney and his wife on September 2, 1890, executed to Mrs. Winnie H. Waite a deed conveying:

"All of block number twenty-three in Gearhart Park, in Clatsop County, Oregon, as said park has been laid

out by us and recorded in the office of the recorder of conveyances of said county.''

The plat so acknowledged was filed for record September 11, 1890, and Mrs. Waite's deed was also filed for the same purpose November 24th of that year.    Mr. Kinney, in July, 1899, appointed Newton McCoy his agent to sell lots and subscribed his name to a writing which so far as material herein reads:

''In consideration of one dollar and valuable services to be performed by said Newton McCoy, we hereby give him for three months from the date hereof the exclusive sale of the real property in Gearhart Park at the prices indicated upon the plat of said park hereto attached, marked 'Exhibit A,' and made a part hereof.''

The plat thus referred to, with the memorandum attached, was duly identified and received in evidence, and is a duplicate of the printed plat, having noted thereon in red ink, between lines representing lots, various numbers ranging from 50 to 500.    Kinney also conveyed away block 24, which lies immediately north of block 23, but is separated from it by Sixth Street.    He on January 24, 1905, executed to the Theo. Kruse Catering Company, a corporation, a deed of all lots, blocks, and tracts in Gearhart Park then remaining unsold.    This conveyance included all the land in the park east of the creek, except blocks 23 and 24.    The County Court of Clatsop County made an order, January 3, 1906, vacating all the streets and avenues east of the creek that are noted on the recorded plat, except Sixth Street and the parts of Fifth Street and of Summit Avenue which are north and east of blocks 23 and 24. All the unsold lots, blocks and tracts in the Park, which were so owned by the corporation last named, were duly transferred by mesne conveyances to the defendant,

which became vested with the legal title thereto March 29, 1910.

Sixth Street, between blocks 23 and 24, was excavated to a depth of 15 feet or more below the surface of the ground at that place. Thereafter, to wit, on May 11, 1911, Mrs. Waite and her husband executed a warranty deed, conveying "all of block 23 of Gearhart Park, in Clatsop County, Oregon," to the plaintiff, who had paid for the land before he examined the records of that county, and without knowing that the printed plat had not been recorded. The defendant caused a survey to be made of its real property east of the creek, immediately south of block 23 when extended to the railroad, and on November 4, 1911, acknowledged a map thereof whereon the land portrayed is designated as "Woodland Park Addition to Gearhart Park," which plat was filed for record on the 13th day of that month. By the latter survey no street borders upon the south line of block 23. No improvement of any highway east of the creek has been made, except on Sixth Street. Teams drawing wagons have passed back and forth along Summit Avenue for some distance south of Sixth Street, though much of the way is covered with standing timber. If the angle of repose be assumed as 45°, and Summit Avenue is only 25 feet wide, as decreed, it would necessarily follow that, in cutting down that highway to intersect Sixth Street, the bottom of the banks of the excavation would terminate in a line 2½ feet above the grade immediately to the north.

The plaintiff in the summer of 1911 orally informed the defendant, and on August 29, 1912, and October 1st of the latter year, respectively, gave to it written notices, that he claimed and should attempt to establish an easement 60 feet in width on the east and south

of his land.   No acknowledgment of his claim having been made, this suit was instituted May 5, 1913, and terminated as hereinbefore mentioned.   E. P. Waite, who negotiated the purchase of block 23 for his wife, testified that he bought the land from M. J. Kinney through the latter's agent, W. I. Crawford.   In referring to the printed plat, a duplicate of which was received in evidence, the witness stated upon oath that it was similar to the one which he saw in the office of such principal and agent at the time he purchased; that in company with Mr. Crawford he personally examined block 23 before buying it and adverting to the dedicated highways by which the land was bordered he stated:

"And at the time my understanding with the agent was that there were 60-foot streets around the whole block."

Alluding to white stakes which he then saw driven in the ground to indicate the width of such streets, and comparing them with a stake which had been received in evidence, he testified:

"My remembrance is refreshed by this very stake. I particularly noticed and observed that they were rather larger than what was ordinarily put into plattings, it seemed to me. * *

"Q. Do you remember any representations that were made with respect to these streets, further than what is shown by the map?

"A. No; I think nothing more than that I was given to understand that they were all 60-foot streets.   Why I mentioned this is the fact that in buying that block, as the building portion was shortened on the west side by the stream, Neacoxie, I was distinctly informed that the streets bordering it (the block) on the south, east, and north were 60 feet, which would exclude any one building closer or encroaching on my block lines, thus making it more desirable."

On cross-examination this witness was asked:

"You bought this property more upon your own view of the premises, by going upon it and stepping the distances off, rather than by this so-called plat, here marked 'Plaintiff's Exhibit A.'

"A. Yes, sir; except by stepping distances off.

"Q. You were not guided by that to any extent?

"A. I am not positive but when Mr. Crawford and I went over the ground that he had one of these maps [meaning the printed plat], and as we passed along and would look at a block we would verify it on the map, until I made my selection. We must have had something to guide us as well, and I think he used one of these public plats, which he took from his office or carried in his pocket; but they had them distributed all around, you know."

This witness further testified that lots were offered him by Mr. Crawford south of block 23.

The plaintiff, an attorney, testified that, when he purchased block 23, he found the stake set to mark the southeast corner; that 60 feet east thereof he found another stake, which he subsequently broke off, and the latter post, having been identified, was received in evidence; that he thereafter found north of block 23 eight other white stakes, similar to the one last referred to, which posts were set to mark the corners of blocks in parallel lines 60 feet apart, designating Summit Avenue as originally surveyed and appearing on the printed plat; and that Mr. Waite, a brother-in-law, showed him a duplicate of the printed plat before buying the block, whereupon the witness advised that the premises could be safely purchased, since the streets bordering thereon were 60 feet in width.

W. R. Nicholas, the plaintiff's son, who is a surveyor, corroborates his father's testimony in respect to the discovery of the stakes and the places where

they were standing. This witness was unable to find any stakes set at 25 feet, or any other distance less than 60 feet, east of the west line of Summit Avenue, nor could he find any stakes east of the creek marking the south line of Seventh Street.

M. J. Kinney testified that he never dedicated or intended to give to the public any real property south of block 23; that he may have had an agreement with some intending purchasers as to the sale of lots, but did not think he had delivered to them any deeds until the plat was recorded; that he marked in lead pencil the prices to be demanded for lots on a plat which he gave to Mr. Crawford, who made many sales for him; that he had no surveys made, except such as are delineated on the recorded plat; and that he never intended to dedicate any part of the premises in conformity with the printed plat, in referring to which he stated upon oath:

"I never saw this plat until after it was printed.

"Q. Do you remember when it was printed?

"A. No; I think not. I think Mr. Crawford started out to advertise this property considerable, and he got out this, and he got out an advertisement sheet, and he got it out before I saw him; when I did see him, I called his attention to some irregularities in it, but it was too late to stop it, because it had already been printed."

This witness, referring to Seventh Street east of the creek, testified:

"I think it was my intention that there should be a street running along south of block 23 and blocks 37 and 36, but it was not dedicated."

In answer to the question, "Did you ever authorize Mr. Crawford to get out this map shown as Plaintiff's Exhibit 'A'?" he replied, "I certainly did not." On cross-examination, however, Mr. Kinney admitted he

had two surveys made of the land west of the creek; but, the first having been found to be erroneous, he caused a resurvey to be made. Referring to the printed plat, to which was attached the written appointment of Mr. McCoy, the witness stated upon oath that he did not write the figures appearing in red ink upon that map, nor did he believe he authorized such notation. Alluding to the representations imputed to his agent in negotiating a sale of block 23, he further testified:

"Mr. Crawford had no right to sell any property contrary to the abstracts and plats that I furnished him; if he did, he went beyond his duty.

"Q. Mr. Crawford was your duly authorized agent in the sale of the property, all the time from the time of platting, until when?

"A. He sold property during the latter part of 1890, and during the year 1891.

"Q. Well, wasn't he your agent in contracting for the sale of property in Gearhart Park, before you filed the plat for record?

"A. Limited only."

The foregoing is deemed to be a fair summary of sufficient of the evidence to illustrate the legal principles involved.

1. It is argued by defendant's counsel that the plaintiff had a full, complete and adequate remedy at law for the redress of his supposed grievances, thereby precluding a resort to a court of equity, and, such being the case, an error was committed in denying a motion to dismiss the suit. No demurrer to the complaint appears to have been interposed. Upon proper application a court of equity will enjoin interference with an owner's easement, when the injury complained of is irreparable, or the intermeddling is continuous, or the remedy at law for the recovery of damages will

be inadequate: 10 Am. & Eng. Ency. Law (2 ed.), 431;
14 Cyc. 1216; Washburn, Easements (4 ed.), 747;
*Church* v. *Portland,* 18 Or. 73 (22 Pac. 528, 6 L. R. A.
259); *Morse* v. *Whitcomb,* 54 Or. 412 (102 Pac. 788,
103 Pac. 775, 135 Am. St. Rep. 832); *Gyra* v. *Windler,*
40 Colo. 366 (13 Ann. Cas. 841–849).

2. A court of equity thus having general jurisdic-
tion to protect an easement at the suit of an owner,
any defect in a complaint, interposed for that purpose
in such forum, is waived when the defendant fails to
demur for lack of jurisdiction of the subject matter
and also joins in an application for equitable relief:
*Kitcherside* v. *Myers,* 10 Or. 21, 23; *O'Hara* v. *Parker,*
27 Or. 156 (39 Pac. 1004); *Security Co.* v. *Baker
County,* 33 Or. 338 (54 Pac. 174); *State* v. *Blize,* 37 Or.
404 (61 Pac. 735); *Moore* v. *Shofner,* 40 Or. 488 (67
Pac. 511); *Investment Co.* v. *Garbade,* 41 Or. 123 (68
Pac. 6); *Killgore* v. *Carmichael,* 42 Or. 618 (72 Pac.
637); *Maxwell* v. *Frazier,* 52 Or. 183 (96 Pac. 548, 18
L. R. A. (N. S.) 102); *Bradtl* v. *Sharkey,* 58 Or. 153
(113 Pac. 653); *Carroll* v. *McLaren,* 60 Or. 233 (118
Pac. 1034); *Bowsman* v. *Anderson,* 62 Or. 431 (123
Pac. 1092, 125 Pac. 270). The defendant by failing
to demur to the complaint, and by praying for affirma-
tive relief in its answer, thereby waived all questions
of jurisdiction, since a court of equity has the right
to hear and determine suits involving easements.

3. The important question to be considered is
whether or not the act of Mr. Kinney in appointing
Mr. Crawford to sell his lots and blocks in Gearhart
Park, and in knowingly permitting that agent to ex-
hibit to intending purchasers a duplicate of the printed
plat, upon which Summit Avenue was represented as
being 60 feet wide and Seventh Street, east of Neacoxie
Creek, as of equal width, estops the defendant as a

subsequent grantee from denying the representations so contained on the printed plat as against the plaintiff as the successor in interest of Mrs. Waite the original purchaser of block 23. The authority of an agent to bind his principal in contracts made with a third party is measured, not only by the agent's express delegation of power, but also by that which he is held out by the principal as possessing, provided, however, the third party had reason to believe and did believe the agent was acting within and not exceeding his authority, and such party would sustain a loss if the contract was not regarded as that of the principal: *Hardwick* v. *State Insurance Co.,* 20 Or. 547 (26 Pac. 840); *Hahn* v. *Guardian Assur. Co.,* 23 Or. 576 (32 Pac. 683, 37 Am. St. Rep. 709); *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218); *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 150, 156 (44 Pac. 390); *Durkee* v. *Carr,* 38 Or. 189 (63 Pac. 117); *Neppach* v. *Oregon & California R. R. Co.,* 46 Or. 374 (80 Pac. 482, 7 Ann. Cas. 1035); *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111).

4. It will be remembered that Mr. Kinney testified Mr. Crawford possessed only limited authority to represent him in selling lots and blocks. This statement, as between them, is undoubtedly true as a matter of fact; but as to a third person who dealt with the agent such sworn declaration is not a correct expression of the law applicable to the circumstances of this case. By permitting Mr. Crawford to exhibit to intending purchasers a duplicate of the printed plat, entitled "Gearhart Park as laid out and recorded by M. J. Kinney, * * W. I. Crawford, Gen. Agent," the principal thereby tacitly, at least, represented that the agency was not special and that the plat so displayed had been duly recorded. From Mr. Kinney's sworn

statement that he marked in lead pencil the prices of lots and blocks on a plat which he delivered to Mr. Crawford, it is reasonable to infer that such map was a duplicate of the printed plat. This deduction is strengthened by the written appointment of Mr. McCoy attached to another printed plat on which were noted in red ink figures representing the prices demanded for the separate pieces of real property which were offered for sale. As to who wrote such numbers on that plat is immaterial. The conclusion seems irresistible that Mr. Kinney knowingly permitted intending purchasers to believe the printed plat had been duly recorded and also that he held out Mr. Crawford as his general agent in negotiating sales of real property in Gearhart Park.

Did Mr. Kinney, by such representations and conduct, make a parol dedication of Summit Avenue to the width of 60 feet east of block 23, and of Seventh Street of equal width extending south of that block, as indicated on the printed plat, notwithstanding different designations of such contemplated highways appear on the recorded plat? It will be kept in mind that Mr. Kinney testified two surveys of land in Gearhart Park were made west of Neacoxie Creek. From the discovery of white stakes driven in the ground in parallel lines 60 feet apart, it is believed the first survey included land east of that stream, and that such stakes were undoubtedly intended originally to mark the boundaries of Summit Avenue. The stake received in evidence and brought up discloses on two sides at right angle the letters, "Str," and on the third side the letters and figures, "B137," which number corresponds with that of the block designated at that place on the printed plat and indicating the southwest corner of such block. The letters "Str" on both sides of the

stake as indicated designate Summit Avenue on the west and Seventh Street on the south. It is fairly to be inferred that divisions of real property, as delineated on the printed plat, were made to correspond with the lines of the first survey, and that Mr. Crawford used a duplicate of that plat to designate particular lots and blocks when negotiating with Mr. Waite for the sale of block 23, before the second plat was filed for record. Whether or not Mrs. Waite's deed was delivered when it was acknowledged is impossible accurately to determine from the evidence before us. Mr. Kinney's testimony is to the effect that he believed no deeds were delivered to purchasers until after the plat was recorded, though some deeds were acknowledged prior thereto. It is believed the printed plat antedates the making of the recorded plat, and that the former was used by Mr. Crawford in negotiating a sale of block 23, and employed in pointing out on the ground the contemplated highways by which the premises were bordered.

It has been repeatedly held that when an owner of land causes it to be surveyed into lots, blocks, streets and alleys, pursuant to which measurements a map is prepared, representing the lines run upon the ground, and he exhibits that map to intending purchasers in consummating the sale of real property indicated on the plat, he thereby irrevocably dedicates to the public the contemplated highways, parks and commons thus designated, and no acceptance by any corporate authority is essential to give validity to the donation: *Lownsdale* v. *Portland,* 1 Or. 398 (Fed. Cas. No. 8579); *Leland* v. *Portland,* 2 Or. 46; *Carter* v. *Portland,* 4 Or. 339; *Meier* v. *Portland Cable Ry. Co.,* 16 Or. 500 (19 Pac. 610, 1 L. R. A. 856); *Hogue* v. *Albina,* 20 Or. 182 (25 Pac. 386, 10 L. R. A. 673); *Steel* v. *Portland,* 23 Or.

176 (31 Pac. 479); *Spencer* v. *Peterson,* 41 Or. 257 (68 Pac. 519, 1108); *Nodine* v. *Union,* 42 Or. 613 (72 Pac. 582); *Oregon City* v. *Oregon & California R. Co.,* 44 Or. 165 (74 Pac. 924); *Christian* v. *Eugene,* 49 Or. 170 (89 Pac. 419); *Moore* v. *Fowler,* 58 Or. 292 (114 Pac. 472); *Kuck* v. *Wakefield,* 58 Or. 549 (115 Pac. 428); *Harris* v. *St. Helens,* 72 Or. 377 (143 Pac. 941).

5. In order to establish a parol dedication, evidence must be adduced tending to substantiate a clear intention to devote some particularly described land to a public use: *Lewis* v. *Portland,* 25 Or. 133 (35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772); *Morse* v. *Whitcomb,* 54 Or. 412 (102 Pac. 788, 103 Pac. 775, 135 Am. St. Rep. 832); *Parrott* v. *Stewart,* 65 Or. 254 (132 Pac. 523); *Jones* v. *Teller,* 65 Or. 328 (133 Pac. 354).

6, 7. A consideration of all the evidence tends to establish an intention on the part of Mr. Kinney to make a parol dedication, to the public, as contemplated highways 60 feet in width, of the parts of Summit Avenue and Seventh Street that border upon block 23, as indicated upon the printed plat, though he subsequently intended that map should be superseded by the recorded plat; but sales of land in Gearhart Park having been made by exhibiting to purchasers a duplicate of the printed plat before the other map was recorded, such circumstances create an estoppel *in pais,* preventing him from asserting any survey contrary to that evidenced by the printed plat, so far as block 23 might be affected thereby.

8. The plaintiff's counsel, without offering any testimony to explain his failure or inability to produce the original plat of the survey of Gearhart Park, from which map it is asserted the printed copies must have been made, was permitted, over objection and excep-

79 Or.—16

tion, to submit in evidence two of such duplicates, and it is maintained that errors were thereby committed. The statute invoked to sustain the legal principle insisted upon, as far as involved herein, reads:

"There shall be no evidence of the contents of a writing, other than the writing itself, except in the following cases:

"1. When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in Section 782.

"2. When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default": Section 712, L. O. L.

The clause thus referred to, in the language quoted, is as follows:

"The original writing shall be produced and proved except as provided in Section 712. If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents of the writing may be proved as in case of its loss; but the notice to produce it is not necessary where the writing itself is a notice, or where it has been wrongfully obtained or withheld by the adverse party": Section 782, L. O. L.

In order to uphold the rule thus declared, reliance is placed upon the case of *Jones* v. *Teller,* 65 Or. 328 (133 Pac. 354), where it was held that a blue-print, purporting to represent the *locus in quo,* and which had been received in evidence, would not be considered for any purpose, since no testimony had been offered to prove that any effort had been made to produce the original. In that case the plaintiff, referring to the map so admitted in evidence, testified that his grantor had a blue-print something like that. The lack of such

proper identification afforded a sufficient reason to warrant the exclusion of the blue-print.

In the case at bar, however, a duplicate of the printed plat was particularly identified as being similar to that used by Mr. Crawford in effecting a sale to Mrs. Waite of block 23, and as between her and Mr. Kinney, the principal and then owner of the premises, each printed plat was an original. "It sometimes happens," says an author, "that there are a number of duplicates of the same document, as in the case of placards, newspapers, etc. In such case, to prove the contents any one of the several copies is admissible": McKelvey, Evidence, (2 ed.), § 272. "Any one of duplicate instruments may be introduced in evidence without accounting for any other. In this connection, however, the term 'duplicate' signifies more than a mere copy; the instruments must be identical not only verbally but also in legal import": 19 Harvard Law Rev. 123. See, also, 2 Wigmore, Ev., § 1232. No error was committed in receiving in evidence duplicates of the printed plat.

9. It is argued that an error was committed in receiving, over objection and exception, testimony relating to white stakes found driven in the ground along Summit Avenue, at a distance of 60 feet from the west line thereof, since it was not disclosed by whom these posts were set, nor that Mr. Waite's attention was called to them when he examined block 23 with a view of purchasing it for his wife. When the first survey of Gearhart Park was made is not manifest from an examination of the testimony. Mr. Kinney and his wife acknowledged the deed which they gave to Mrs. Waite about two years after they purchased the real property. Prior to the delivery of that deed Mr. Waite had examined block 23, stepped the width of the highways bordering that block and found them to

be 60 feet, saw the white stakes similar to the one received in evidence, and his attention was then 'attracted to these posts. Such facts do not bring the case within the rule announced in *Carlyle* v. *Sloan,* 44 Or. 357 (75 Pac. 217), and no error was committed as alleged.

10. It is maintained that the proposed dedication to the public of the highways, the width and existence of which are challenged herein, cannot be considered as open for a time exceeding the statute of limitations; that such dedication was lost by nonuser, and that an error was committed in awarding to the plaintiff any relief beyond that conceded by the answer. The sale of a lot bordering upon a street that is indicated on a plat of survey amounts to an irrevocable offer by the dedicator, that so far as he is concerned, the proposed highway, unless legally vacated, shall forever remain open to the public.

11. A formal acceptance of the donation is unnecessary, since an approval of the gift by municipal officers will be implied: *Carter* v. *Portland,* 4 Or. 339; *Meier* v. *Portland Cable Ry. Co.,* 16 Or. 500 (19 Pac. 610, 1 L. R. A. 856); *Hogue* v. *Albina,* 20 Or. 182 (25 Pac. 386, 10 L. R. A. 673).

12. The grantees of the dedicator may extinguish the right of the public in and to a street by an unlawful encroachment thereon for a term equal to the period of the statute of limitations, which purpresture raises an estoppel against the municipality on the ground of the negligence of its officers in failing to assert a right to the easement: *Schooling* v. *Harrisburg,* 42 Or. 494 (71 Pac. 605); *Nodine* v. *Union,* 42 Or. 613 (72 Pac. 582); *Oliver* v. *Synhorst,* 48 Or. 292 (86 Pac. 376, 7 L. R. A. (N. S.) 243); *Portland* v. *Inman-Poulsen Lumber Co.,* 66 Or. 86 (133 Pac. 829, 46 L. R. A. (N. S.) 1211, Ann. Cas. 1915B, 400):

Neither Summit Avenue nor Seventh Street has been improved or encroached upon, except that Woodland Park addition to Gearhart Park has been surveyed and platted so as to join block 23 on the south, and the defendant is in such constructive possession of the disputed premises as the delivery of its deed imports. Since there has been no invasion of the plaintiff's right, the statute of limitations never began to run against his remedy.

13. It is urged that though Mr. Kinney, by the acts and conduct of his agent, may have made a parol dedication of the disputed easements to such an extent as to be binding upon him, the defendant for a valuable consideration secured its title by mesne conveyances, and had no knowledge of such dedication, and hence no estoppel *in pais* can arise as against it. In *Carter* v. *Portland,* 4 Or. 339, it was determined that whatever information, respecting a parol dedication of public parks, was sufficient to attract the attention of a purchaser to the prior rights and equities of the public in and to the premises, so as to put him upon inquiry as to the source, nature and extent of the dedication, would operate as notice, and that when the evidence showed the purchaser had such knowledge as would induce further investigation, notice would be implied. In that case the circumstances antedating and attending the purchase of two blocks in the City of Portland by the plaintiffs were reviewed, and it was held they had acquired such knowledge of a prior parol dedication to the public of such blocks as to prompt inquiry and charge them with notice, and authorize a reversal of a decree which they had secured quieting their title.

The plat of Woodland Park Addition to Gearhart Park shows the initial point of the survey of that tract is the southeast corner of block 23. The white stakes

driven in the ground to mark the east and west borders of Summit Avenue could have been found by the defendant's agent who had charge of the survey. One of these stakes, set at the southeast corner of block 37, and 60 feet east of the southeast corner of block 23, had thereon at right angles the letters "Str." clearly indicating the location of Seventh Street immediately south of blocks 23 and 37. As these proposed highways were marked upon the ground prior to the execution of the deed to the defendant, though neither Summit Avenue nor Seventh Street is referred to in such deed, the rule adopted in *Green* v. *Miller,* 161 N. C. 24 (76 S. E. 505, 44 L. R. A. (N. S.) 231), is not controlling herein. From an inspection of the white stakes mentioned the defendant could have obtained such knowledge of the original survey as to induce an inquiry as to the source, nature and extent of the easements; and, this being so, notice of the survey as thus marked upon the ground must be implied and imputed to the defendant.

Other assigned errors are deemed immaterial, and for that reason they will not be discussed. From these considerations it follows that the decree herein should be modified so as to widen Summit Avenue, east of block 23, from 25 feet to 60 feet, and in all other respects to be affirmed; and it is so ordered.

MODIFIED. REHEARING DENIED.

MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.