[Filed November 5, 1888.]

AARON MEIER, Appellant, *v.* THE PORTLAND CABLE RAILWAY COMPANY, Respondent.

DEDICATION.— Where the owner of land lays it off into blocks, lots, and streets, platting it as an addition to a city, and causes the plat, although not acknowledged so as to entitle it to record, to be recorded in the book of deeds, in the office of the clerk of the county in which the land is situated, and sells and conveys any of the lots or blocks by a reference in the description thereof to such plat, it constitutes an irrevocable dedication to the public of the streets shown upon it, and where the limits of the city are subsequently extended so as to include such addition, the corporate authorities thereof have the right, at any time, when the public necessities require it, to use such streets as public thoroughfares.   It is not essential in such cases to the validity of the dedication that the city authorities formerly accept it, or proceed at once to have the streets opened and improved.   The dedication only implies that the streets will be used as such when the public exigencies require it; and until they are opened and improved they remain in abeyance.   A party making a dedication of streets in such manner

can only reclaim their use when the object and purpose of making it have utterly failed. Where T. C. and M. C., owners of land, sold and conveyed a portion thereof to one F., which was described in the deed of conveyance as a part of a certain block in a certain addition to the city of P., and referred in the description thereof to a plat of said addition as recorded in a certain book of deeds in the office of the clerk of the county of M., that being the county in which the land was situated, and the evidence in the case disclosed that the plat was recorded as referred to in the deed, and the other deeds were shown to have been executed to lots in such addition by reference thereto, and that the records failed to show that any other plat of said addition had been recorded at the time; *held,* that said references amounted to a recognition that the plat was real, and that the evidence was sufficient to authorize the jury to find that T. C. and M. C. made it and caused it to be recorded; *held, further,* that the transaction amounted to a dedication of the streets shown upon such plat, and that neither the said T. C. and M. C. nor their grantees had any authority to revoke it as to any of them. *Held,* that the grantees from the parties making such dedication had no authority to make a new map or plat, substituting a new street or way in place of an old one, without the consent of the purchasers of blocks and lots under the former plat, and of the public. *Held,* that although a common-law dedication of land does not pass the legal title thereto out of the party making it, yet that it is sufficient to defeat an action at law for the recovery of the possession of the property as against those who are using it, in accordance with the object and purpose for which it is dedicated. *Held,* that where a plaintiff in an action for the recovery of the possession of real property, and damages for wrongful withholding of it, seeks to aggravate the damages by showing a special injury to the freehold, the defendant has a right to show that the acts consisted in the erection of a structure thereon; that the plaintiff would succeed to the title to it in case of recovery; and that it would be valuable to him.

APPEAL from a judgment of the Circuit Court for the county of Multnomah.

*Mitchell, McDougall, Tanner,* and *Bower,* for Appellant.

*Dolph, Bellinger, Mallory & Simon,* and *Whalley, Bronough & Northrup,* for Respondent.

THAYER, C. J.—The appellant commenced an action in the said Circuit Court against the respondent, a private corporation, to recover the possession of certain real property described as lot No. 2, block No. 44, in Carter's Addition to the city of Portland, in the county of Multnomah, and State of Oregon, as laid out on the duly recorded map and plat of said addition. The appellant alleged in his complaint ownership of the property in fee-simple, his right of possession to it, a wrongful entry and withholding by the respondent, and damages in consequence thereof in the sum of five hundred dollars.

The respondent, in its answer, denied the said allegations of the complaint, and averred that the said property was, at the time referred to, and still continued to be, a public street, duly dedicated as such by the original donee thereof from the United States, and through whom the appellant derived his alleged title; that it is a part of Fifteenth Street in the city of Portland, and that the respondent was duly authorized by said city to enter upon and use the said street and property for the cable railway. The appellant in his reply denied the dedication and the authority from the city to use the property as alleged. The cause was tried by jury, and the main point of contention was as to whether the *locus in quo* had been dedicated as alleged in the answer.

The appellant gave in evidence a chain of mesne conveyances from Thomas Carter and Minerva Carter, donees of a land claim from the United States, including said Carter's Addition to the city of Portland, down to himself. Also a plat of Carter's Addition to the city of Portland, dated November 2, 1871, executed and acknowledged by J. S. Smith and wife, L. F. Grover and wife, C. M. Carter and wife, and T. J. Carter and wife, recorded in book of records of deeds of Multnomah County at pages 488 to 491 inclusive. He then introduced evidence tending to show that respondent, on the twenty-sixth day of October, 1887, against the protest of the appellant, entered upon said premises, tore down and removed the fences therefrom, dug numerous trenches from five to ten feet deep, and erected thereon trestle-work, from sixty to seventy feet in height, upon which to operate its cable road.

The respondent to maintain its defense gave in evidence a plat marked "Plat of Carter's Addition to the city of Portland," recorded May 28, 1868, in Book H, of records of deeds of Multnomah County, at pages 708 and 709 thereof. Said plat was not acknowledged, nor did it appear by whom it was recorded; but respondent's counsel in connection therewith gave in evidence a deed, executed by the said Thomas Carter and Minerva Carter, his wife, and T. J. Carter, to one John Flinn, dated February 24, 1871, which purported to convey to said

Flinn, in consideration of four hundred dollars, certain premises
referred to therein, as that certain piece or parcel of land known
and designated on the plat of Carter's Addition to the city of
Portland, recorded in records of deeds for Multnomah County in
Book H, page 708, as the N. W. quarter of block C, according to
said map or plat, and which reference was followed by a descrip-
tion of the premises conveyed by metes and bounds. Said
counsel also gave in evidence deeds executed by said T. J. Carter
and C. M. Carter to other parties prior to the date of said plat
of November 2, 1871, which contained in the description of the
premises conveyed reference to said Carter's Addition to the city
of Portland, but did not mention any plat. Evidence was also
given, on the part of the respondent, tending to show that the
plat of Carter's Addition to the city of Portland, recorded in
Book H of deeds, at pages 708 and 709, was the only plat of
Carter's Addition to the city of Portland recorded in said
records of said county prior to the second day of November,
1871, and that "Fourteenth Street," as designated on said plat
of May 28, 1868, included the premises in controversy, and
corresponds with "Fifteenth Street," as designated on the plat
of November 4, 1871.

It further appeared in proof that in the conveyance from
Thomas Carter and Minerva Carter, his wife, to T. J. Carter,
C. M. Carter, and J. S. Smith, bearing date October 29, 1870,
one of the mesne conveyances through which the appellant
derived his alleged title, and in the conveyance from the last-
named grantees and their wives to L. F. Grover, of an undi-
vided one-fourth interest in the premises conveyed to them by
said Thomas and Minerva Carter, bearing date the third day
of November, 1870, another of said mesne conveyances, blocks 1,
12, 13, 14, 11, 2, 36, 33, 34, 35, 39, and 40, also blocks A, B,
C, D, and E, all in Carter's Addition to the city of Portland,
also a parcel of ground abutting on the south side of blocks 33
and 34, being four hundred and sixty feet in length from east to
west, and two hundred and sixty feet wide, were expressly
excepted. It appears that the premises in controversy were not
within the city of Portland until 1885, when its limits were so

extended as to include them; nor does it appear that the city ever attempted to exercise authority or control over said street at or near said premises until July 20, 1887, at which time the common council of the city adopted an ordinance, that was approved by the mayor on the thirtieth day of July, following, authorizing the respondent, and its assigns, to construct, maintain, and operate a street railway upon and along said street, from the middle line of Market Street southerly to Spring Street, passing over and across the said premises, and under the authority of which ordinance the respondent entered thereon, and did the acts alleged in the appellant's complaint.

The appellant's counsel attempted at the trial to prove damages in consequence of said act above mentioned, and the respondent's counsel, in response thereto, introduced evidence tending to show that the value of the timber in the trestle-work put upon the premises was greater than the amount of the damages claimed by the appellant. This evidence was objected to by appellant's counsel, and its admission by the court excepted to. Several other exceptions were taken by the appellant's counsel to the rulings of the court at the trial, and in charging the jury, which will be kept in view in considering the case. The main question involved is, whether there was a dedication of the premises to the public use as a street.

The plat of 1868 was not acknowledged by Thomas Carter and Minerva Carter, the owners of the tract of land of which the premises are a part, so as to entitle it to record; but it was upon the record, and they referred to it in their deed to Flinn, and thereby recognized it as the plat of Carter's Addition to the city of Portland. I think the jury were justified in finding from the evidence set out in the bill of exceptions that said Thomas Carter and wife caused the plat to be made and recorded. They certainly adopted it as the recorded plat of Carter's Addition, which was an acknowledgment of its reality, and a sanction of its making and recording. The appellant's counsel contends, however, that the making and recording of a plat in such a case must be followed by an acceptance on the part of the public of the streets shown therein, in order to com-

plete the dedication, and he cites a number of cases which hold, in effect, that the laying off of a town, filing and recording the plat thereof, is merely an offer to dedicate the streets shown upon it, which does not become irrevocable until the public have accepted them.   This as an abstract proposition of law is correct.   But as to what constitutes an acceptance in such a case involves a further inquiry.   It will not be contended that any formal acceptance on the part of the public is necessary or even practicable.

When a proprietor lays off a town, makes and publishes a plat of it, showing the blocks, lots, streets, and public squares, and sells to various parties blocks and lots, referring to such plat in describing them, I think the acceptance will be implied. The proprietor in such case deals with the public.   In every sale of a lot or a block under such circumstances he gives an assurance that the ground as platted shall remain intact.   (*Carter and Mason* v. *City of Portland*, 4 Or. 339; Angell on Highways, [3d ed.] § 149.)   It would be unreasonable and unjust to allow a town proprietor to revoke the dedication of any street indicated upon the plat of the town, for the reason that the corporate authorities of the town had not specially accepted it as a street, nor the public actually entered upon and used it as such.   The proprietor proposed to the public in the outset that the ground represented as the street should forever remain open to be used for that purpose, and upon a sale of lots and blocks by reference to such plats he precluded himself from making any other or different disposition of it; at least, that is the doctrine established by this court in *Carter and Mason* v. *City of Portland*, *supra*, and I see no good reason for departing from it.   Laying out a town and recording a plat of it without selling any of the lots would not, in the absence of a statute upon the subject, constitute a dedication of the streets.   And if the proprietor, after selling some of the lots, were to change the plat by discontinuing some of the streets, or by establishing new streets to be used instead of the old ones, and the change was acquiesced in for a long time by the purchasers of the lots and the public, it would probably operate as a revocation *pro tanto* of the dedication as originally made.

The appellant's counsel sought, I apprehend, to apply this latter rule in their case, when they requested the court at the trial to instruct the jury that if they found that the public accepted the use of a road or street, designated as the Terrace Road, alongside of the strip of land claimed to have been dedicated, it was evidence of an acquiescence on the part of the public in the revocation, and declination to accept any other dedication than the one acted upon.

The Terrace Road referred to in the instruction asked seems to have been laid out at the instance of Smith, Grover, C. M. Carter, and T. J. Carter after they had acquired their interests under the deeds of October 29, 1870, and November 3, 1870. It was no doubt expected that it would supersede that part of Fourteenth Street, as designated on the first plat, between Montgomery Street and the point where the Terrace Road turns up the hill, just south of Hall Street. But said parties had no authority to discontinue said Fourteenth Street between said points. The south one half of blocks B and C and blocks 34 and 35, which were expressly excepted out of said deeds, front and abut, as it appears from said first plat, upon nearly all that part of said street. The land adjacent to the premises in controversy, aside from a small portion thereof in front of block 38 on the original plat, was not conveyed to said parties, nor did they own that part of the street, as the excepting of the said blocks out of the said deeds also excepted therefrom the part of said street contiguous to them, it being appurtenant thereto. Under the statute of this State, the land in a street goes to the adjoining lot owners when it is vacated, and I cannot see that the parties referred to had any more right to vacate said part of said Fourteenth Street than a stranger would have had, nor that the use by the public of the Terrace Road would be evidence of a revocation of the dedication of it.

The construction of the law relating to the dedication of land to the public use varies according to the nature and character of the use to which it is to be devoted, and the circumstances under which the dedication is made. The proof of it in some cases must be clear and cogent of an intent to dedicate, as where valu-

able property is claimed to have been given to the public for public use, and no motive shown upon the part of the donor for making the gift. In other cases again, proof of an acceptance of the dedication must be shown by positive acts of its approval, as when it imposes a burden upon those for whose use it was intended. Where, however, a town proprietor lays off his land into town lots, indicates streets upon the plat thereof, and offers the lots for sale, he has a purpose to accomplish by dedicating such streets, and that he intends it to be irrevocable is beyond the possibility of a doubt.

The proprietor expects, and the purchasers of lots understand when they purchase that the streets shown upon the plat will forever remain open to public use. The location of the town site, the number and extent of the streets, and the belief of the purchasers that they will remain permanent and perpetual, are material inducements to the purchase. Nor does the proprietor or the purchasers anticipate that all the streets shown upon the plat will be immediately opened and used. It is generally known and understood that a large portion of them will not be required for use for many years after the town is laid out; that their necessity will depend upon its future development and growth, and that they will remain in abeyance until the public exigency demands that they be opened and improved. Nor does the dedication impose any such burden upon the public as would imply that its acceptance might be refused. Under the system which prevails in this State for the improvement of streets in cities, the lot owners bear the burden of the expense.

The cost of the improvement is assessed upon the lots which front and abut upon the street improved, in proportion to the benefits conferred. The city authorities constitute the governmental machinery by which the cost is assessed and its payment enforced. Neither the general public nor the corporate authorities of the city have any option in the matter. The right to the use of the street inures to the former, and the duty of providing for its use in the manner indicated, and of maintaining it, devolves upon the latter. The whole affair from its inception partakes of both a public and of a private nature. When streets

in a town have been established in the manner mentioned, and the town becomes incorporated, or subject to the jurisdiction of a municipal government, they will necessarily be under its control. I presume that there is not a city charter in the State but that gives to its officers control of the streets within its limits for the benefit of the public as thoroughfares. That is one of the principal objects for which municipal governments are instituted. The streets are usually established before the government is organized; it finds them as the parties made them; takes control of them under a positive direction of law, and its acceptance of them is really a matter of fiction. The city authorities, under such circumstances, have no alternative but to accept of the streets found to have been dedicated by the town proprietor. But it does not follow that the city is under any obligation to open and improve such streets at once. They may be allowed to remain dormant until their use becomes a public necessity.

The town proprietor ought not to complain on account of such a course. He received a consideration for his dedication of them, was enabled to dispose of lots by means thereof, and understood when he platted the streets, that they would not be opened and improved, or made use of as thoroughfares until the public needed them for that purpose. I can discover no tenable ground upon which Thomas Carter and wife could, if they had retained their interest in the town site, have asked that the street in question be vacated between the points before mentioned. They could not reasonably claim that the public had failed to comply with any condition upon which the dedication was made, nor could they insist that the use of the ground included in the street should revert to them, because the public had not entered upon and used it as such, for they did not understand or expect when they dedicated it that it would be so used until the public necessities should require it; and if Thomas Carter and wife could not, under the circumstances suggested, revoke the dedication, then certainly their grantees cannot do it. If the view I have taken of the questions involved in this case is not correct, it would follow, it seems to me, that a town proprietor of an

unincorporated town could, at any time before the dedication of the streets had been accepted by an entry upon and user of them by the public, revoke it, although he had already sold very many of the lots, describing them by reference to the plat. Such a doctrine would countenance fraud and dishonesty; and a concession to the purchasers of the lots of the right of ingress and egress to and from the lots purchased by them, notwithstanding the revocation, would not extenuate or palliate it. The purchasers of lots in such cases do not understand when they make the purchase that the only benefit they will receive from the streets will be a mere right of way to their lots; they are assured that the streets will remain open for public use, and as the town builds up will be improved, which will add to its importance and to the value of their property.

Many of the courts, in discussing this subject, have made too great an effort to discriminate between such purchasers and the general public. The former are not a distinct class from the latter; they belong to it; are as much a part of the public as those who use the streets for the purposes of travel. If a dozen different persons were to buy lots under the circumstances before alluded to, and impliedly stipulate with the town proprietor that the streets shown upon the plats of the town site should perpetually remain open to public use, they would, so far as I can see, represent the public in the affair as much as a like number of wayfarers would who travel upon such streets, and have equal authority to accept a dedication of them for the public. The acceptance is not supposed to be made by the entire public, it is done by a comparatively few persons who represent it; and a direct agreement made by those who are personally interested in the matter, that the streets shall remain open to public use, ought to constitute as much an acceptance of them by the public, as the using of them by other members of the community would.

The view herein expressed regarding the law of dedication of streets in towns fully sustains the instructions given by the Circuit Court to the jury upon that subject. The instructions were liberal, and as favorable to the appellant as he had a right

to claim. The view which the appellant's counsel asked that court to adopt, as shown by the instructions which they requested to be given, is entirely too extreme. It attached, under the circumstances of the case, altogether too much importance to the question of *acceptance.* In order to render the dedication effectual, courts must consider the nature of the transaction, and circumstances attending it, in order to ascertain the true intention of the parties, and its legal effect. When a person maps off his land into town lots and streets, and offers his lots for sale by reference to the map, there is no mistaking his intention. He designs, if he is honest, that the streets shall belong to the public, and that they will be accepted and used by it as such, whenever the public necessity or convenience requires it. He does not, of course, anticipate that the various members of the community will rush forward in hot haste to accept his offer; but that its acceptance will abide the course and events of time. The public exigencies requiring the use of the property may not arise for years, but that will not, where he has induced parties to invest in his scheme, release him from the obligation of his agreement. His gift is unconditional, and he can never revoke it without the intervention of circumstances rendering it impossible for it to take effect.

The appellant's counsel insists that the admission of the evidence at the trial as to the value of the structure placed upon the premises in question by the respondent, and that the instruction of the court that such value might be set off against the amount of damages claimed by the appellant, were erroneous. I do not see how the ruling in that particular could injure the appellant, unless he established his right to recover the possession of the premises. But irrespective of that question, it could not have been a material error. It was not, as I view it, technically correct to allow the value of the structure to be set off against the injury to the freehold, yet I think its value should be taken into consideration in assessing the damages. The appellant, if there had been no dedication of the land, would have had a right of action for the respondent's wrongful breaking into the premises, to the extent, at least, of nominal

damages, and he had a right to prove in aggravation of the damages, the acts committed by the respondent while in possession. Those acts consisted in digging holes in the ground and in erecting trestle-work, which by reason of its being a fixture, became the property of the appellant, and the timbers of which were valuable. In consequence of these acts the appellant gained title to the timbers. To ascertain, therefore, how much the appellant was damaged in consequence of digging the holes and erecting the trestle-work, the value of it to the appellant, as merchandise, should be taken into consideration. If A were to wrongfully enter upon B's land, and dig thereon a foundation and build a valuable house, the latter should not be entitled to recover against the former damages for the digging without regard to the value of the structure. The question in such a case is, how much the subsequent acts have aggravated the damages, and if, instead of being an injury they are a positive benefit, he should not be allowed to recover on account of them. Under this view the said evidence was properly admitted, and the instruction in the main was correct.

The appellant's counsel also claims, that in a dedication the legal title remains in the party making it, and that the rights of a party claiming under the dedication are equitable rights only, and cannot be set up in an action at law as against the legal title. A common-law dedication does not pass the legal title to the property dedicated, it merely transfers the use; but that is sufficient, under our statute, to defeat an action to recover the possession of the property, when the possession is consistent with the object and purpose of the dedication.

The judgment appealed from must be affirmed.