# McCOY v. THOMPSON.*

(164 Pac. 589.)

**Dedication—Plat—Sales With Reference to Recorded Plat—Effect.**

1. Dedications are of two general kinds: Common law and statutory. Common-law dedications may be either express or implied, while a statutory dedication operates as a grant. Also, *held*, that an unsuccessful attempt to dedicate land under a statute, if followed by sales with reference to the plat, may result in a completed common-law dedication.

**Dedication—Intent of Dedicator—Construction—Streets.**

2. The intent of the dedicator must be clearly manifest, and if the dedication is statutory, the plat and writings furnish the means to ascertain such intent, and must be construed as other writings, while a common-law dedication is determined from the dedicator's acts, conduct and what he said, and construed to give effect to the intent so manifested. Where the plat contains the words "street forty ft. wide" it expresses in plain terms an intent to make a public way, in all that the term implies, and does not mean a private way.

**Dedication—Acceptance by County and Improvement of Street not Essential.**

3. Neither a formal acceptance by the county nor the immediate opening and improvement of a street are essential to complete an irrevocable dedication.

[As to acceptance as an essential to the dedication of a highway, see note in 15 Am. St. Rep. 31.]

**Dedication—Irrevocable Dedication by Referring in Deed to Recorded Plat.**

4. Even where express words of dedication are not to be found in the dedication deed, and the street in question is shown by the plat,

———————————

*On dedication of land to public use, see note in 6 L. R. A. 259.
REPORTER.

the sale of lots by the proprietor with reference to such plat is sufficient to constitute a completed and irrevocable dedication, and is, therefore, binding upon the dedicator's successors in interest.

**Adverse Possession—Evidence Insufficient to Establish—Statutes— Streets.**

5. Inclosing a part of a street for some seventeen years does not establish title by adverse possession, for the reason that in 1895 (Laws 1895, p. 57), an act was passed by the legislative assembly preventing the extinguishment of highways by adverse possession. (See, also, Laws 1903, p. 279; Sections 6371, 6372, L. O. L.)

From Marion: William Galloway, Judge.

Department 1.   Statement by Mr. Justice Harris.

Alice McCoy is prosecuting this suit in an attempt to enjoin E. A. Thompson from inclosing and occupying a strip of land 40 feet in width, which the latter claims to own and the former asserts is a street.   The controversy arises out of the platting of an addition to the unincorporated town of Mill City.   H. J. Hadley owned a considerable tract of land which was bounded on the south by the Santiam River.   Hadley platted the south end of the tract and left the remainder unplatted.   The plat delineates 12 lots arranged in a single row extending east and west with lot 1 as the east end of the row.   All the lots except lot No. 4 are 100 feet deep, and with the exception of lot No. 4 all have a frontage of 50 feet on Front Street. The Santiam River pursues a westerly course and the entire space between the north bank of the Santiam River and the frontage of the 12 lots is labeled Front Street.   In brief, the plat portrays a row of 12 lots facing Front Street, which runs east and west and is parallel with and next to the Santiam River.   While the plat does not expressly state that it is drawn to a scale, it nevertheless appears to have been so drawn.

The land in controversy adjoins lot No. 1 on the east. It will be recalled that lot No. 1 is the east end of the

row of lots.  A single line is drawn on the plat to the east of, parallel with and approximately the same length as the east side line of lot No. 1.  The open space between this single line and the east side of lot No. 1 is labeled thus: "Street 40 feet wide bears North."  The plat contains the caption: "Hadley's Addition to Mill City."

The plat, together with a writing signed by Hadley and a jurat signed by a notary public, was recorded on February 14, 1889, by the county recorder.  The writing signed by Hadley is here set out:

"Hadley's Addition to Mill City.
"Laid out on my land Feb. 1, A. D. 1889.  The southeast corner of lot No. 1 is on the north side of the Santiam River 47 links North and three chains and ten links West of the N. W. corner of the Mill lot, of the Santiam Lumbering Company, which N. W. corner aforesaid is on the W. side of section 30, T. 9 S., R. 3 E., Wil. Mer.  The lots are 50 by 100 feet and the first three are to the cardinal points, No. 4 is fractional 64 feet next to the river and 34½ feet, back end.  The south ends of lots 4 to 12 have a bearing N. 73° 2′ W. and their sides are at right angles thereto or N. 16° 58′ E. 100 feet.  Front Street occupies all the land between the lots and the river not more than 50 feet, situated in Marion County, State of Oregon.  I herewith submit this plot and description for record."

The jurat bears date February 4, 1889, and reads thus:

"Personally came before me a notary public in and for the aforesaid county and state, the above named H. J. Hadley, to me personally known to be the identical person who signed this instrument and who acknowledged to me that he executed the same freely and for the uses and purposes therein mentioned."

The plaintiff owns lot No. 1 and she traces her title through mesne conveyances to a deed made by Hadley.

Under date of April 18, 1889, Hadley conveyed by warranty deed to Angus Scott Shaw "Lot number 1 One in block number 1 One in Hadley's Addition to Mill City in the County of Marion and State of Oregon as it appears on the recorded plat of said Hadley's Addition to Mill City in the recorder's office at Salem in said Marion County." Shaw and his wife moved on lot No. 1 in 1889 and lived there until 1899, when they sold the property and moved away.

The defendant claims title to the disputed land by virtue of a deed from James M. Wadsworth who had previously purchased from Hadley. On April 29, 1904, Wadsworth received from Hadley a deed describing 106 acres and also lands described thus:

"The North half ($\frac{1}{2}$) of the southeast quarter of section thirty (30) in township nine (9) south of range three (3) east; except Hadley's Addition to Mill City."

Subsequently, on March 27, 1915, Wadsworth executed and delivered to the defendant a warranty deed for lands described by metes and bounds including the disputed tract as well as other land.

At some time after he purchased lot No. 1, probably about 1893, Shaw went to Hadley and, according to the testimony of the latter, "he asked me, if I remember aright, if I thought there would be any objection, or if I objected to him putting a garden in there, and as near as I can remember the answer I gave him that I had no objections if nobody else had."

Shaw constructed a fence across the south end of the 40-foot strip on the north line of Front Street, but he also provided a gate so that a team and wagon could be driven in or out of the inclosure. This fence and gate were maintained continuously until about 1910, when both the fence and gate were torn down and removed. During the entire period beginning with

about 1893 and ending with about 1910, Shaw and his successors used part of the 40-foot strip for garden purposes. The disputed strip remained open and uninclosed or as one witness said: "It lay as waste land" from 1910 until July, 1914, when the defendant rented the disputed land from Wadsworth, erected on it a tent in which he has since lived, and inclosed it by constructing a fence along the north line of Front Street. After Thompson acquired his deed in 1915, he claimed that he was the owner of the 40-foot strip and denied that the plaintiff or the public had any right to enter upon the disputed premises. The alleged street is of no direct benefit to any persons except the plaintiff, J. W. Jackson, who owns land immediately to the east, and possibly one other person. Some of the witnesses averred and others denied that the strip had been regarded by the public as a street. Two witnesses in addition to the plaintiff and her husband testified that they had used the premises as a street without asking permission from anyone; but Wadsworth insisted that the witnesses first obtained permission from him. No part of the disputed strip has ever been improved as a road or street, and no public officer has ever asserted or exercised control over it.

The complaint avers that Hadley dedicated the land as a street. The answer denies the alleged dedication and avers that the defendant and his predecessors have had adverse possession for the requisite period of time. The trial court found that the land had never been laid off or platted as a street and that the defendant owned the premises in fee simple. The decree followed the finding and the plaintiff appealed.

REVERSED.

For appellant there was a brief over the names of *Mr. William H. Trindle* and *Mr. Charles Z. Randall,* with an oral argument by *Mr. Trindle.*

For respondent there was a brief over the names of *Messrs. McNary & McNary, Mr. Everil M. Page* and *Mr. Lauflin M. Curl,* with an oral argument by *Mr. John H. McNary.*

Mr. Justice Harris delivered the opinion of the court.

Although the plaintiff contends that a street extends from Front Street for a distance of 160 feet, or 60 feet beyond the rear or north end of lot No. 1, yet, since there is no evidence to sustain a finding that a street extends farther than 100 feet or the length of lot 1, we shall confine our attention to the question of whether a street 40 feet wide extends from Front Street along the east side of lot No. 1. If Hadley did not by his acts and conduct dedicate the disputed strip as a street, then plaintiff cannot prevail, and therefore the first inquiry is whether there was a dedication.

The inquiry will not be influenced by the parol testimony given by Hadley to the effect that he intended to dedicate the land as a street. We do not undertake to determine whether that testimony was competent since it is in no wise necessary to a decision of this suit; and while there is a contrariety of judicial opinion concerning that character of evidence, we content ourselves by merely noting some of the relevant authorities and assuming that the evidence is incompetent: *Hobson* v. *Montieth,* 15 Or. 251, 256 (14 Pac. 740); *Spencer* v. *Peterson,* 41 Or. 257, 260 (68 Pac. 519, 1108); 1 Elliott on Roads and Streets (3 ed.), § 173;

*Los Angeles* v. *McCollum,* 156 Cal. 148 (103 Pac. 914, 23 L. R. A. (N. S.) 378).

Dedications are of two general kinds: Statutory and common law: *Nodine* v. *Union,* 42 Or. 613, 616 (72 Pac. 582). Common-law dedications may either be express or implied: 1 Elliott on Roads and Streets (3 ed.), § 133. Generally, by reason of the terms of the statute, a statutory dedication operates as a grant: 8 R. C. L., p. 897. Some authorities declare that common-law dedications always operate upon the principle of an estoppel, while others go no further than to say that such a dedication is of itself a distinctive common-law doctrine based upon principles analogous to those underlying estoppels. The theory usually accepted is: That to reclaim land would be a violation of good faith to the public and to those who have acquired private property with the expectation of enjoying the use contemplated by the dedication; and in case of the sale of a lot with reference to a plat there is the added feature that an easement indicated by the plat constitutes a part of the consideration passing to the purchaser: 8 R. C. L., p. 906; 13 Cyc. 437; 1 Elliott on Roads and Streets (3 ed.), § 125.

Upon examination of the writing accompanying the plat it will be observed that there are no words of grant, and although Front Street is mentioned, no direct reference is made to any other street. Obviously it was the purpose of Hadley to comply with the requirements at that time exacted by the statute. The writing is not in the form usually adopted and it may well be the subject of debate as to whether it constitutes a perfect statutory dedication. We do not attempt to decide, however, whether the plat and writing as recorded produced a statutory dedication; but, for the purposes of this discussion we shall assume, with-

out deciding, that a statutory dedication was not effected. An unsuccessful attempt to dedicate land under a statute if followed by sales with reference to the plat may result in a completed common-law dedication: 8 R. C. L., 893, 897; 13 Cyc. 441; 1 Elliott on Roads and Streets (3 ed.), § 124.

The intent of the dedicator is the foundation and life of all dedications and the intent must be clearly manifested. Where the dedication is statutory in character the plat and writing generally furnish the means by which to ascertain the intent, and these, like all other writings, must be construed by the terms contained in them. In the case of a common-law dedication, the intent is to be determined from what the dedicator said in making the dedication and by his acts and conduct; and the rule of construction is to give effect to the intent manifested: *Christie* v. *Bandon,* 82 Or. 481 (162 Pac. 248); *Carter* v. *Portland,* 4 Or. 339, 340, 343; *Lewis* v. *Portland,* 25 Or. 133, 134 (42 Am. St. Rep. 772, 35 Pac. 256, 22 L. R. A. 736); *Kuck* v. *Wakefield,* 58 Or. 549, 555 (115 Pac. 428); *Jones* v. *Teller,* 65 Or. 328, 332 (133 Pac 354); *Parrott* v. *Stewart,* 65 Or. 254, 259 (132 Pac. 523); *Eugene* v. *Lowell,* 72 Or. 237 (143 Pac. 903); *Harris* v. *St. Helens,* 72 Or. 377 (143 Pac. 941, Ann. Cas. 1916D, 1073); 8 R. C. L., pp. 890, 896; 4 Ency. of Ev. 110; 13 Cyc. 452; 1 Elliott on Roads and Streets (3 ed.), § 130.

We now turn to the plat and the writing accompanying it for the purpose of discovering whether Hadley intended to dedicate the 40-foot strip next to lot No. 1 as a street. At the time of filing the plat Hadley owned all the land including the disputed premises. No street existed on any part of the Hadley land until the plat was filed. There is no evidence to indicate that the 40-foot strip had ever been used

as a right of way or a road, or as a street at any
time prior to 1889, and therefore the words ''street
40 ft. wide'' did not describe a street previously exist-
ing, but, on the contrary, they refer to a street which
in no way existed until delineated on the plat.   The
space made by the line drawn to the east of and
parallel with the east line of lot No. 1, and the words
''street 40 ft. wide'' express in plain and unmis-
takable terms an intent to make a street of the 40-foot
strip.   The word ''street'' has a definite meaning.
When the owner of land makes a plat and refers to a
''street,'' he does not mean a private way; but the
word signifies a public way in all that the term im-
plies: 1 Elliott on Roads and Streets (3 ed.), § 21;
*City of Denver* v. *Clements,* 3 Colo. 472; *Smith* v.
*City of Goldsboro,* 121 N. C. 350 (28 S. E. 479).   The
plat and writing clearly manifest an intention on the
part of Hadley to dedicate the disputed land as a
street; and, indeed, the 40-foot strip appears upon
the plat in such a manner as to be entirely incon-
sistent with any other theory: *Oregon City* v. *Oregon
& C. R. Co.,* 44 Or. 165 (74 Pac. 924).

It is true that the disputed premises were never im-
proved as a street nor formally accepted by the
county; but the well-recognized rule is that neither
a formal acceptance by the county nor the immediate
opening and improvement of a street are essential to
complete an irrevocable dedication: *Carter* v. *Port-
land,* 4 Or. 339, 340, 347, 348; *Meier* v. *Portland Cable
Ry. Co.,* 16 Or. 500 (1 L. R. A. 856, 19 Pac. 610);
*Hogue* v. *Albina,* 20 Or. 182, 186 (10 L. R. A. 673, 25
Pac. 386); *Spencer* v. *Peterson,* 41 Or. 257, 260 (68
Pac. 519, 1108); *Oregon City* v. *Oregon & C. R. Co.,* 44
Or. 165, 178 (74 Pac. 924); *Christian* v. *Eugene,* 49
Or. 170, 173 (89 Pac. 419); *Oliver* v. *Synhorst,* 58 Or.

582, 585 (109 Pac. 762, 115 Pac. 594); *Moore* v. *Fowler,* 58 Or. 292, 297 (114 Pac. 472); *Silverton* v. *Brown,* 63 Or. 418, 424 (128 Pac. 45); *Harris* v. *St. Helens,* 72 Or. 377, 387 (143 Pac. 941, Ann. Cas. 1916D, 1073); *Barton* v. *Portland,* 74 Or. 75; 79 (144 Pac. 1146); *Nichols* v. *Title & Trust Co.,* 79 Or. 226, 244 (Ann. Cas. 1917A, 1149, 154 Pac. 391); Elliott on Roads and Streets (3 ed.), §§ 124 and 129.

The offer made by Hadley to dedicate the street became a completed and irrevocable dedication when he delivered the deed to Shaw. The conveyance was made with express reference to the recorded plat for lot number one is described as being lot No. 1 "as appears on the recorded plat of said Hadley's Addition to Mill City in the recorder's office at Salem in said Marion County": *Portland* v. *Whittle,* 3 Or. 126, 129; *Carter* v. *Portland,* 4 Or. 339, 340, 346; *Meier* v. *Portland Cable Ry. Co.,* 16 Or. 500 (1 L. R. A. 856, 19 Pac. 610); *Steel* v. *Portland,* 23 Or. 176, 184 (31 Pac. 479); *Mutual Irr. Co.* v. *Baker City,* 58 Or. 306, 321 (110 Pac. 392, 113 Pac. 9); *Moore* v. *Fowler,* 58 Or. 292, 297 (114 Pac. 472); *Kuck* v. *Wakefield,* 58 Or. 549, 552 (115 Pac. 428); *Jones* v. *Teller,* 65 Or. 328, 332 (133 Pac. 354); *Spencer* v. *Peterson,* 41 Or. 257, 260 (68 Pac. 519, 1108); *Oregon City* v. *Oregon & C. R. Co.,* 44 Or. 165, 176 (74 Pac. 924); *Christian* v. *Eugene,* 49 Or. 170, 172 (89 Pac. 419); *Hogue* v. *Albina,* 20 Or. 182, 186 (10 L. R. A. 673, 25 Pac. 386); *Nicholas* v. *Title & Trust Co.,* 79 Or. 226, 244 (Ann. Cas. 1917A, 1149, 154 Pac. 391); 8 R. C. L. 890.

Usually the dedicator employs language to the effect that he dedicates all his interests in the streets shown by the plat, and an examination of the Hadley plat and writing will disclose that neither this nor equivalent language is used; but, as said in *Oliver* v.

*Newberg,* 50 Or. 92, 96 (91 Pac. 470): "Even where such words of dedication are omitted, and the street is shown by the plat, the sale of lots by the proprietor with reference to such plat is sufficient to complete such dedication."

Ordinarily the sale of a single lot completes the dedication and more especially does the sale of a single lot effect a dedication of a street upon which the lot abuts; and consequently the sale of lot No. (1) to Shaw operated as an acceptance of the offer of Hadley to dedicate the adjacent land as a street and rendered the dedication irrevocable: *Roberts* v. *Mathews,* 137 Ala. 523 (34 South. 624, 97 Am. St. Rep. 56); 1 Elliott on Roads and Streets (3 ed.), § 128.

The deed delivered by Hadley to Wadsworth on April 29, 1904, expressly excepts "Hadley's Addition to Mill City," and therefore Wadsworth acquired no greater rights than Hadley owned; and Thompson, who purchased from Wadsworth, does not own more than his immediate grantor. The dedication which was effected by the sale of lot No. 1 to Shaw on April 18, 1889, not only bound Hadley but it also bound his successors in interest, Wadsworth and Thompson: *Parrish* v. *Stephens,* 1 Or. 73, 75 76; *Portland* v. *Whittle,* 3 Or. 126, 129.

The defense of adverse possession relied upon by the defendant must fail. It is true that Shaw inclosed the premises and used the land for a garden and this use was continued by his successors until about 1910. Hadley did not sell to Wadsworth until 1904. The testimony of Hadley demonstrates that the use made of the land by Shaw did not constitute adverse possession. If any person claimed the land adversely it was only after Wadsworth purchased in 1904. The uncontradicted evidence is that the fence

was torn down and removed in 1910, and after that time the premises "lay as waste land" until July, 1914. The evidence fails to show adverse possession for ten years.

There is, however, an additional circumstance affecting the claim of adverse possession. In 1895 the legislature declared that all streets in unincorporated towns were public highways and jurisdiction over them was conferred upon the county courts of the various counties: Laws 1895, p. 57. At the same session of the legislative assembly an act was passed preventing the extinguishment of highways by adverse possession (Laws 1895, p. 57); the statute was re-enacted in 1903 (Laws 1903, p. 279); and is now codified as Sections 6371 and 6372, L. O. L.

Hadley dedicated a strip 100 feet long and 40 feet wide as a street as shown on the plat and the dedication became irrevocable when the abutting lot was sold to Shaw, and since the completed dedication was not subsequently defeated, the plaintiff as the owner of lot No. 1 is entitled to use the disputed strip as a street. The decree is reversed.          REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE McCAMANT concur.