Argued February 19, affirmed April 8, 1919.

RICHARDSON *v.* POLK COUNTY.

(179 Pac. 664.)

**Dedication—Highway—Evidence.**

1. Evidence *held* to show that there had been a dedication for the use of the public as a county road of all land between the lines of two old rail fences erected by plaintiffs' predecessor, so that plaintiffs were not entitled to any of the land between such lines.

[As to what amounts to a dedication of a highway, see note in 57 Am. St. Rep. 749.]

From Polk: HARRY H. BELT, Judge.

Department 1.

This suit to quiet title was brought by A. R. Richardson and his wife against Polk County and it involves a road. The first question in dispute is whether the road is a legally existing county road; and if it is, then the next question is whether the line along which the plaintiffs commenced to build a new fence is inside of the road. A patent dated March 18, 1859, was issued to Benjamin F. Burch and his wife Eliza A. Burch for a donation land claim embracing 640 acres. The patent conveyed the south half of the claim to Benjamin F. Burch and the north half to his wife. The road in controversy, which for the sake of convenience we shall call the Burch road, runs across the south half of the donation land claim. The westerly end of the Burch road connects with the main highway, which extends from Independence to Corvallis, at a point where the Independence-Corvallis highway runs north and south. Leaving the Independence-Corvallis highway, the Burch road runs across the Burch donation land claim, a distance of about one half of a mile; and upon leaving the east line of the donation land claim, the road continues onward towards the east for a distance of about four miles to Buena Vista.

In 1912 the plaintiffs purchased from M. M. Diel and her husband a tract of land which lies on the south side of and is adjacent to the Burch road along its entire course as it crosses the donation land claim. The land which the plaintiffs purchased is described in their deed as follows:

"Beginning at a point which is 25.75 chains north and 6.24 chains east of the southwest corner of the Donation Land Claim of B. F. Burch and wife, Not. No. 1520, Claim No. 39, Township 9 South Range 4 West of the Willamette Meridian thence running north 8.03 chains; thence West 7.98 chains; thence

along west line north to the center of the County Road running thence in a southeasterly direction and along the center line of said County Road to a point in the east line of said Burch Claim; thence south 6.89 chains; thence west 24.63 chains to point of beginning, containing 55 acres of land be the same more or less."

The call in the deed which speaks of running from the center of the county road "in a southeasterly direction and along the center line of said county road" refers to the Burch road. Benjamin F. Burch died at some time prior to the trial. The house in which Burch lived is located near to and on the south side of the Burch road at a point about three eighths of a mile east of the place where the westerly end of the Burch road connects with the Independence-Corvallis highway.

There is evidence tending to show that at least some and probably most of the road lying between the east line of the Burch donation land claim and Buena Vista is 40 feet in width "between fences." At some time, probably in 1915, a petition was filed with the County Court asking that the road leading from the Independence-Corvallis highway to Buena Vista be widened to 60 feet throughout its entire length. As a result of the petition and at the instance of the County Court a survey of the road was made in March, 1915, by C. R. Canfield, the county surveyor. Apparently the proceedings to widen the road terminated with the survey, because there is no record of any further steps. When surveying the road Canfield drove a pipe into the ground at a point in the Independence-Corvallis highway where he calculated the center line of the Burch road would, if extended, intersect the center line of the Independence-Corvallis highway. More than twenty years ago a stone was placed in the ground at the east end of the Burch road. The Davidson donation land

claim lies immediately east of the Burch donation land claim; and the northwest corner of the Davidson claim coincides with the inner corner of a re-entering angle on the east side of the Burch donation land claim. The stone, at the east end of the Burch road, marks the location of the inner corner of the re-entering angle in the Burch claim and the northwest corner of the Davidson claim. The course and distance of a straight line run from the pipe in the Independence-Corvallis highway to the stone at the end of the Burch road is south 62° 37′ east 37.07 chains.

In April, 1915, Canfield made a survey of the premises which the plaintiffs had purchased from the Diels. The survey demonstrated that the description contained in the deed embraces only about 44 acres instead of 55 acres of land. There was a rail fence along the south side of the Burch road. Throughout the length of and on each side of this rail fence were trees and much undergrowth. The plaintiffs caused some of these trees to be grubbed out and they cleaned out the undergrowth and removed the rail fence; and afterwards, in 1916, the plaintiffs caused the surveyor to run a straight line from the pipe in the Independence-Corvallis highway to the stone at the end of the Burch road. After running the line from the pipe to the stone the surveyor ran and marked upon the ground a line on the south side of, 20 feet from and parallel with, the first line. The plaintiffs commenced to construct a wire fence along the line which was located 20 feet to the south of the line which connects the pipe and stone. The line upon which the rail fence stood on the south side of the Burch road is throughout its entire length a few feet to the south of the line along which the plaintiffs propose to construct a wire fence; and hence if permitted to complete the wire

fence it will have the effect of narrowing the Burch road. The objections which the county raised to the construction of the proposed fence resulted in this lawsuit. The decree of the Circuit Court was for the county and the plaintiffs appealed.        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondents there was a brief and an oral argument by *Mr. E. K. Piasecki,* District Attorney.

HARRIS, J.—1. The plaintiffs disavow any intention to close the Burch road or to prevent the public from using it; but they do contend that the road should be treated as a 40-foot highway with a straight line connecting the pipe and stone as the center line of the road. The county insists that the Burch road is a public highway; that the rail fence which was removed by the plaintiffs marked the south boundary of the road, and that therefore the plaintiffs cannot lawfully build a fence north of the line upon which the old rail fence stood. The county relies upon the doctrine of dedication as well as upon the rule of prescription to establish its contention.

It will be necessary to give a summary of the testimony relating to the Burch road. At some time after locating upon his donation land claim Benjamin F. Burch established a gateway, primarily, we may presume, to enable him to reach the Independence-Corvallis highway and secondarily, we may assume, for the accommodation of his neighbors living east of his premises. After having maintained the gateway for some indefinite period Benjamin F. Burch removed the gates and from that time on there was an open road from the Independence-Corvallis highway to

Buena Vista. When the gates were removed and the road opened to the public there was a. rail fence on each side of the Burch road; and both these rail fences had been built by Burch. The rail fences were not absolutely straight and yet each was built on a comparatively straight line and was about as straight as was practicable, considering the surface of the ground and the presence of trees. There is no dispute concerning the location of the rail fence on the south side of the Burch road. The parties are not agreed, however, upon the exact location of the old rail fence on the north side of the road, especially at the east end. At some time, between seven and ten years prior to the trial which occurred in 1917, the rail fence on the north side of the road was removed and a new fence was built. The plaintiffs say that this new fence, especially at the east end, was moved out into the Burch road, at some places 3 or 4 feet and other places 7, 8 and 9 feet. All the witnesses, however, who had personal knowledge of the existence of the rail fence on the north side of the Burch road, testified that the new fence was built on or practically on the line of the old rail fence. It will not be necessary to attempt to decide whether the fence now along the north side of the road does or does not vary from the line of the old rail fence, for the reason that, even according to the contention of the plaintiffs, the variation did not exceed 9 feet at any one place and in the main would probably not be greater than 3 or 4 feet. Assuming without deciding that the present fence along the north side of the road occupies the line of the original rail fence we now turn to a map drawn from measurements made upon the ground. We observe from an inspection of the map that at its west end the Burch road is 66 feet

wide between the lines of the rail fences and at its east end, where it crosses the east line of the Burch donation land claim, the road is 44 feet wide between the lines of the rail fences; and that between its east end and its west end the width of the road varies from 43 feet to 67 feet between the lines of the rail fences.

W. A. Scott, who was 59 years old at the time of the trial, testified that when he was 16 years of age he commenced to work for Burch and that he continued to work for him for about 15 years. Scott says that although he recollects of a gate being there before "he went to work," the road was open when he commenced to work for Burch. According to the testimony of Scott the road was open to the public at least 43 years prior to the date of the trial or at least as early as 1874. Scott also testified that it was his recollection that the road supervisor worked the road nearly every year while the witness was in the employ of Burch. This same witness further stated that "the county overseer ordered him [Burch] to work like they do now" and that he [the witness] as an employee of Burch but under the supervision of the road supervisor worked on this road with a plow and a scraper. According to the testimony of Scott, no attempt was ever made by Burch to interfere with any road supervisor.

M. N. Prather stated that he could "remember distinctly the road was there in 1870"; that he was road supervisor from 1914 to 1916 and that Polk County paid for the work done on the road.

S. H. McElmurray said that he had known the road since 1872 and that it was "open at both ends" when he first saw it; that he was road supervisor in 1876 and 1877; and that while he was such supervisor Burch

"asked me one day if I wouldn't have the road grubbed out there east of his house running down here, I told him I would see the County Court, and whatever they said, if they said grub it out I would do so. So I come down and saw the County Court and they said 'Go ahead and grub it out and grade it up'—it had never been graded, never been graded or nothing. I went and grubbed it out that spring and the next summer, I think it was '77, I graded it too; we didn't have no graders in the county, there wasn't but one or two dump scrapers at the time."

Continuing with his testimony, McElmurray said that the road was first graveled "in '80 some time" and has "been graveled ever since"; that it has been "kept up by the county, the county paid me for what work I did."

Peter Kurre said that he had known the road for about 34 years; that he was road supervisor in 1886 and that he put "the first bridge in there." This witness also testified as follows:

"I have worked on that road, individually myself, for 25 years. I graveled it, I graded it, and I was supervisor on that road for one year. The county paid me for it."

D. P. Stapleton said that he knew that the road had been open for at least 35 years.

Peter Kurre testified that during the last 25 years "the average width of the traveled path of the road" has been "close to 30 or 35 feet"; that the road has "been a splendid road" and that it has "been graded and leveled like an ordinary county road."

J. M. Jones, who has resided in Independence for about 45 years, said that he had known the road "ever since I can remember" and that the average width of the road, including the gravel, the grading and ditches, was about 40 feet.

,D. P. Stapleton said that in his opinion the average width of the road, including the ditches, was "possibly 32 or 33 feet."

W. A. Scott stated that "a space of" between 30 and 40 feet "could be used by the public for travel without obstructions."

When asked to state "about how wide is the average traveled portion of the" Burch road, William Addison stated that it was "25 or 30 feet."

The evidence clearly shows an unmistakable intention on the part of Benjamin F. Burch to abandon all the land between the two rail fences to the use of the public as a county road; and consequently there was a common-law dedication of all the land between the lines of the old rail fences: *City of Clatskanie* v. *McDonald,* 85 Or. 670, 674 (167 Pac. 560); *McCoy* v. *Thompson,* 84 Or. 141, 148 (164 Pac. 589). Burch removed the gates so that the public could use the road without hindrance; he built the rail fences for no other conceivable purpose than to confine the travel between the fences; the county accepted the dedication and for more than 30 years has kept the road graded and graveled, and the uncontradicted evidence is that the road compares favorably with the other county roads, including the Independence-Corvallis highway; the record shows that every dollar paid for work upon the road was paid by the county and there is no evidence that any person worked upon the road without pay; the strongest kind of confirmation of the intention of Burch to dedicate the road is found in the fact that he himself recognized that the road was a county road when he caused Scott to work upon it in obedience to the order of the road supervisor. The evidence is of the most convincing character and leaves no room for doubt as to the intention of Burch when

he opened the road to the public: *Harris* v. *St. Helens,*
72 Or. 377, 386 (143 Pac. 941, Ann. Cas. 1916D, 1073).
The lines upon which the rail fences stood mark the
boundaries of the Burch road. The decree appealed
from is affirmed, but without costs to any party in
either court.                                     Affirmed.

McBride, C. J., and Bean and Benson, JJ., concur.